No. 19,365.

THE WARREN MORTGAGE COMPANY, *Appellee*, v. THOMAS F. WINTERS et al., *Appellees*, and ROY LEBEN et al., *Appellants*.

SYLLABUS BY THE COURT.

1. LIEN—*Purchase Money—Undelivered Deed—Security.* A lien upon land is acquired by one who lends money for its purchase, under a promise that he is to receive a mortgage, and in the meantime is given the undelivered deed to hold as security for the performance of that agreement.

2. SAME—*Subsequent Purchaser—Priority of Liens.* A mortgage given at the time of the purchase of the mortgaged land by the mortgagor, to obtain the money used by him to pay the price and thereby procure the deed, has priority over a deed made by the mortgagor at a time when he had no title, to a grantee who knew of the negotiations for the mortgage and had agreed to take the property subject to it, although the only reference to the mortgage in the deed is in an exception to the warranty of title.

Appeal from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed March 6, 1915. Affirmed.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellants.

*R. M. Hamer, H. E. Ganse,* both of Emporia, and *Henry Lampl,* of Wichita, for the appellees; *M. M. Suddock,* of Emporia, of counsel.

The opinion of the court was delivered by

MASON, J.: The Warren Mortgage Company brought an action to enforce a lien against a tract of land, the validity of which was denied by Roy Leben and S. B. Leben. The plaintiff recovered judgment, and the Lebens appeal. The principal question presented is whether the findings (only one of which is challenged as having no support whatever in the evidence) justify the judgment rendered. The matters shown by the findings will be spoken of as the established facts. In the following statement the December dates are in 1911 and the others in 1912.

On December 1 the land involved was owed by B. F. M. Klump and Lee Ward, who about that time gave B. M. LeGrande an option to purchase it, expiring March 1. A few days later LeGrande applied to the mortgage company for a loan of $3000 on the land, representing that Thomas F. Winters, his adopted son, was buying it. On December 25 the company's agent advised LeGrande that it would lend $2800 on the property. On the same day Winters made a formal application for the loan, which the company accepted January 4, subject to the approval of the title.

On December 21 LeGrande entered into a written contract with S. B. Leben to exchange the land and $500 for a stock of goods, which recited that the deed was to be received subject to a mortgage for $3000 to run seven years at seven per cent interest. Leben knew that the mortgage referred to had not been made, but that it had been applied for and that the negotiations were pending. The contract concluded: "This bill of sale or a copy is to be put up with the deed to be held in Escrow with J. Gardner until the abstract is brought up to date, and until a sufficient time is given to show the goods are all clear of debt." On the same day the stock of goods was delivered to LeGrande, who had learned that it was clear of debt. LeGrande and S.

B. Leben agreed that the deed should be made to the latter's brother, Roy Leben. A deed from Winters to Roy Leben (intended to cover the land, but by a defective description omitting eleven acres of it) with a check for the $500, was placed in the hands of Gardner, it being the intention of all the parties that they were not to be delivered until the mortgage should be recorded and noted on the abstract of title. The warranty clause was followed by the words "except a mortgage for three thousand dollars." Roy Leben knew all about the transaction. The title to the land was still in Klump and Ward. The purpose of the loan was to pay the balance of the purchase price to them. They executed a deed to Winters, which was placed in a bank to be delivered on the payment of the price.

On February 12 Gardner and the Lebens, in violation of the agreement, delivered the deed to Roy Leben, and it was recorded on that day, all without the knowledge or consent of LeGrande, Winters or the mortgage company.

The mortgage company intended to ·place the loan with the Merchants Loan & Trust Company, for which it acted as agent, and the papers were made out in that name. As they were later assigned to the plaintiff, further reference to the Merchants company will be omitted. On February 16 Winters executed a mortgage for $2800, due in seven years, bearing 5½ per cent interest, and a commission (or interest) mortgage for $294, due in seven years, bearing interest at ten per cent after maturity. The mortgages were recorded May 10.

On March 4 the mortgage company paid the amount of the loan ($2795—a deduction of $5 being made for abstract and recording fees) to the banker who held the deed to Winters, and it was applied on the purchase price to Klump and Ward. This left a balance of $200, which was furnished by S. N. Brees, who had been acting as the agent of LeGrande, on his promise

that a second mortgage should be executed to secure its repayment, and the banker continued to hold the deed as security for this agreement. On April 29 Brees orally assigned his claim to the company, for $200, and it received the deed to hold as security for the execution of the second mortgage. On the same day Roy Leben orally promised to give the company a mortgage on the property for $3000, due in seven years, bearing seven per cent interest, and the company agreed upon the execution of such mortgage to deliver the deed to Winters. On April 22 Roy Leben had agreed with the company that he would make a deed back to Winters for the tract described in the deed to him, and that Winters should then execute the $3000 mortgage and reconvey to him the entire tract, including the part inadvertently omitted in the first deed. This arrangement failed because Winters at the time refused to make a new deed.

The interests of the two Lebens are substantially the same, as are those of LeGrande and Winters, and for the purpose of an abbreviated statement the acts of S. B. Leben may be regarded as those of Roy Leben, and the acts of LeGrande as those of Winters. The situation then presented is substantially this: Winters had an option on the land. He contracted for its sale to Leben subject to a mortgage for $3000, for which he was negotiating. He received his payment and placed a deed to Leben with Gardner to hold until the mortgage should be of record and shown upon the abstract. Gardner delivered the deed before this condition was fulfilled. Winters obtained $2800, which he applied to the payment of the purchase price, by giving a mortgage for the money lent him for that purpose. This left $200 to be paid before he could obtain his deed. He procured this by a promise to make a second mortgage for the amount, and the undelivered deed was held as security for the performance of the agreement.

As against Winters the mortgage company has a legal mortgage for $2800, and a claim for $200 which is secured by the deed which it still holds, and which has not been delivered to the grantee. This is 'not the case of an attempt to create a mortgage by the deposit of the title deeds—conveyances which have become effective by delivery. It is the retention of an undelivered deed as security for the purchase price by one who stands in the attitude of the unpaid vendor. Leben has no interest which can conflict with that of the mortgagee. The deed to him conveyed nothing, because it was not legally delivered, and because at the time of its manual delivery, Winters had no title to convey. The execution and delivery of a warranty deed by Winters before he himself had a title would have bound him personally, and by equitable estoppel as well as by the statute any title which he afterwards obtained would have inured to the benefit of the grantee. But by this principle, Leben could only get from Winters what Winters himself obtained, and Winters never did for a single instant have title to the property save in subjection to the mortgage. The mortgage was essentially—in view of the relations of all the parties—one for purchase money. One who executes a purchase-money mortgage is not regarded as obtaining the title and then placing an incumbrance on it. He is deemed to take the title charged with the incumbrance, which has priority even over preëxisting claims. And a mortgage given to a third person to obtain the money used in buying the property is entitled to the same preference.

"The priority of the purchase-money mortgage to other liens created before the execution of the mortgage rests upon the doctrine that the deed from the vendor and the mortgage by the vendee are parts of one single and entire transaction. Because the seizin of the vendee is thus instantaneous, the title to the land does not for a single moment rest in him, but

merely passes through him and vests in the mortgagee without stopping beneficially in the purchaser, and during such instantaneous passage the prior lien cannot attach to the title." (23 A. & E. Encycl. of L. 470.)

"A mortgage given for the unpaid balance of purchase-money on a sale of land, simultaneously with a deed of the same and as a part of the same transaction, takes precedence of prior judgments and all other existing and subsequent claims and liens of every kind against the mortgagor, to the extent of the land sold." (27 Cyc. 1180.)

"As a general rule, a mortgage given to secure purchase money is none the less a purchase-money mortgage because executed to one who lends the purchase money rather than to the vendor of the property." (23 A. & E. Encycl. of L. 466.)

"Where a purchaser of land, at the same time he receives a conveyance, executes a mortgage to a third person, who advances the purchase-money for him, such mortgage is entitled to the same preference over other liens existing against the mortgagor as it would have had if it had been made to the vendor himself." (27 Cyc. 1182.)

The finding which is attacked as without support in the evidence is to the effect that the deed was delivered to Leben before LeGrande had time to have the abstracts brought down to date. The court also found that the parties contemplated that the mortgage should be shown on the abstract, and in this view the finding as to insufficient time was well founded.

Complaint is made of the rejection of evidence offered by the Lebens, chiefly relating to their information regarding the land. The rejected evidence has been examined and is not regarded as affecting the vital questions by which the controversy is to be determined. The court found that LeGrande had not been guilty of any fraud or misrepresentation in the deal with the Lebens.

The appellants also contend that they should have been allowed a jury trial on the ground that the essential

matter in controversy is the title to the real estate. It is conceded that *Park v. Busenbark*, 59 Kan. 65, 51 Pac. 907, is against the contention, but we are asked to review that decision. We think the present case falls in the class of those in which a jury trial is not a matter of right.

The judgment is affirmed.