No. 66,452

HOMESTEAD LAND TITLE CO., *Plaintiff*, v. UNITED STATES OF AMERICA, and DIRECTOR OF TAXATION, KANSAS·DEPARTMENT OF REVENUE, *Defendants*.

(819 P.2d 660)

Opinion filed October 25, 1991.

*John Michael Hale*, of Kansas Department of Revenue, argued the cause and was on the brief for defendant Kansas Department of Revenue.

*Calvin C. Curtis*, of Department of Justice, Tax Division, of Washington, D.C., argued the cause, and *Shirley D. Peterson*, assistant attorney general, *Gary R. Allen* and *William S. Estabrook*, of the same division, and *Lee Thompson*, United States Attorney, were with him on the brief for defendant United States of America.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This interpleader action, which is presently pending in the United States District Court for the District of Kansas, involves a dispute between the United States and the State of Kansas about the priority of competing tax liens. Judge Dale E. Saffels of the United States District Court has certified to this court the following question, pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*: Does a Kansas sales tax lien attach to real property which is subject to a claim of homestead exemption under Article 15, § 9 of the Kansas Constitution?

The facts are stipulated to by the parties. Marcia C. Shook, who is the debtor and taxpayer in this action, and Ralph V. Shook, who is Marcia's husband, acquired a tract of property as their homestead in Shawnee County, Kansas, on February 28, 1971.

Marcia operated a floral shop known as "Rosemary Gardens" in Topeka, Kansas. She began to incur unpaid state withholding and sales tax liabilities in September 1983. On July 3, 1984, the Director of Taxation, Kansas Department of Revenue (Department), issued a tax warrant for the sum of $15,719.94 against Marcia for unpaid sales tax, penalties, and interest.

Homestead Land Title Company (Homestead) tendered the sum of $4,364.32 to the court in this interpleader action. The court, the parties, and interested persons agreed that the funds should be disposed of as follows:

| | |
|---|---:|
| Homestead Land Title (legal expenses) | $   600.00 |
| Ralph V. Shook | 1,582.16 |
| Clerk of the Court for distribution in the interpleader action | 2,182.16 |
| Total | $4,364.32 |

Upon payment in accordance with this order, plaintiff Homestead was dismissed as a party and discharged from further liability. At issue in this case is the $2,182.16 representing Marcia Shook's share of the proceeds from the sale of the property.

In the pretrial order filed December 21, 1990, the parties stipulated to the following:

"1. This court has jurisdiction of the subject matter of this case and the cross-claim of the Director of Taxation, State of Kansas pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 2410. 28 U.S.C. § 2410 does not independently create jurisdiction over a suit against the United States, but does serve to waive sovereign immunity such that the United States may be subject to a cross-claim of codefendant.

"2. The debtor, Marcia C. Shook, and her husband Ralph V. Shook sold certain property, which they had together occupied as a homestead, on or about November 21, 1989.

"3. On July 6, 1984, the Director of Taxation, Kansas Department of Revenue filed its lien, pursuant to Kansas statute, with the Clerk of the District Court, Shawnee County, Kansas, against said property for Ms. Shook's failure to pay Kansas sales taxes.

"4. On April 24, 1986, the United States of America registered its lien in the records of the Register of Deeds, Shawnee County, Kansas, at book 2346, page 523 against said property for Ms. Shook's failure to pay federal taxes.

"5. Both the Kansas sales tax lien, recorded on July 6, 1984, and the federal withholding tax lien, recorded April 24, 1986, were proper and in accordance with the respective state and federal statutes governing each.

"6. Ms. Shook's share of the proceeds from the sale of homestead property is $2,182.16."

The parties extensively discuss cases that concern who has priority to the proceeds of this interpleader action. In considering the question certified, we are not concerned with the question of priority. Issues of priority are questions of federal law that will be decided by Judge Saffels. As the United States Supreme Court noted in *United States v. Rodgers*, 461 U.S. 677, 683, 76 L. Ed. 2d 236, 103 S. Ct. 2132 (1983): "[I]t has long been an axiom of our tax collection scheme that, although the definition of under-lying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law."

Here, the parties stipulated that the Department filed a lien with the Clerk of the District Court of Shawnee County, Kansas, on July 6, 1984. The United States of America (USA) registered its lien in the records of the Register of Deeds in Shawnee County, Kansas, on April 24, 1986. If the liens became effective at the time they were filed, these filing dates suggest that the Department's lien became effective before USA's. However, priority is a question that will be decided by the federal court. Instead, we must decide whether the lien of the Department *attached* to this real estate when it was filed pursuant to Kansas statute on July 6, 1984. The homestead law at issue in this case is contained in Article 15, § 9 of the Kansas Constitution and provides as follows:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife *And provided further,* That the legislature by an appropriate act or acts, clearly framed to avoid abuses, may provide that when it is shown the husband or wife while occupying a homestead is adjudged to be insane, the duly appointed guardian of the insane spouse may be authorized to join with the sane spouse in executing a mortgage upon the homestead, renewing or refinancing an encumbrance thereon which is likely to cause its loss, or

in executing a lease thereon authorizing the lessee to explore and produce therefrom oil, gas, coal, lead, zinc, or other minerals."

Under Article 15, § 9, a husband and wife may consent to sell the homestead, in which case the sale is not forced. Otherwise, the owners cannot be forced to sell a homestead unless the sale is done under one of the following three exceptions:

(1) for taxes;

(2) for payment of obligations contracted for the purchase of said premises; and

(3) for erection of improvements on the premises.

Nothing in the record indicates that the sale here was forced or was the result of foreclosure of any lien. Instead, it appears the parties consented to the sale of this property on November 21, 1989. The proceeds remaining from the sale were filed in this interpleader action.

USA argues that the lien did not attach because the homestead law prevented the Department from having any interest in the property at the time the lien was filed. Because the lien filed by the Department was not for taxes arising against this property, USA argues that the Department could not enforce the lien by selling the property; therefore, the lien was ineffective. USA is arguing that, because the Department could not have foreclosed the tax lien on the property, the lien did not attach at the time it was filed but, instead, became effective only when the property was sold. In support of this argument, USA relies heavily upon a previous Tenth Circuit case that arose out of the United States District Court for the District of Kansas, *United States v. Hershberger*, 475 F.2d 677, 681 (10th Cir. 1973).

In *Hershberger*, the United States attempted to foreclose a federal tax lien against a husband, using property owned in joint tenancy by the husband and his wife. Both the United States and the State of Kansas had income tax liens against the property but stipulated to the priorities of their liens. They also admitted that the tax claims were against only the husband's one-half interest in the property and that the wife owed no taxes. *United States v. Hershberger*, 338 F. Supp. 804, 805-06 (D. Kan. 1972). The court concluded that the wife's homestead right prevented enforcement of the tax liens for delinquent income taxes on the property claimed as a homestead. Although the court recognized

that one of the exceptions to the homestead law was for payment of taxes, the court concluded that the only taxes that would allow foreclosure and sale of the homestead property had to arise from the property involved. In making this decision, the court noted:

"The taxes covered by the Kansas exception must relate only to taxes arising against the property involved. At the time the term was used in the Kansas Constitution there was no such thing as income, sales, etc. type of tax by the Federal Government or the State Government. Not only that, but in addition, the tax on the homestead property was not severable against any individual homesteader." 338 F. Supp. at 808.

The Tenth Circuit affirmed the district court's decision, noting that the homestead law was intended to benefit the family and society by protecting " 'the family from destitution and society from the danger of her citizens becoming paupers.' " 475 F.2d at 681 (quoting *Morris v. Ward*, 5 Kan. 239, 244 [1869]).

The court concluded that, because the wife owned an indivisible, undivided one-half interest in the property that was separate and apart from her husband's interest, and because she was entitled to enjoy her interest in the property as long as it was used as a homestead, the Kansas homestead law prevented the government from enforcing its federal tax lien by foreclosing on the property. 475 F.2d at 682.

The power of a federal court to order the sale of the family home subject to a state homestead exemption in order to satisfy a federal tax lien was recently addressed by the United States Supreme Court in *United States v. Rodgers*, 461 U.S. 677. Although this issue is not the question this court must decide, the parties discuss *Rodgers* at length, and the case itself discusses *Hershberger*. However, in *Rodgers*, the Court recognized the distinction between the attachment of a tax lien and the forced sale of the property to satisfy that lien: "In the homestead context, by contrast, there is no doubt, even under state law, that not only do *both* spouses (rather than neither) have an independent interest in the homestead property, but that a federal tax lien can at least *attach* to each of those interests." 461 U.S. at 702 n.31. The Court further noted:

"We agree with the Court of Appeals that the Government's lien under [26 U.S.C.] § 6321 cannot extend beyond the property interests held by the delinquent taxpayer. We also agree that the Government may not ul-

timately collect, as satisfaction for the indebtedness owed to it, more than the value of the property interests that are actually liable for that debt. But, in this context at least, the right to collect and the right to seek a forced sale are two quite different things." 461 U.S. at 690-91.

USA, relying upon *Hershberger*, argues that the taxes covered by the Kansas Homestead Exemption "relate only to taxes arising against the property involved." 338 F. Supp. at 808. Because the taxes here do not arise from the property that was subject to the homestead law, USA argues that the Department's tax lien could not have attached at the time it was filed. The Department spends a great deal of time rebutting this argument. Its brief reviews at length the arguments surrounding the enactment of the Homestead Exemption that are contained in the Wyandotte Constitutional Convention.

If this case involved an attempt to foreclose on the property due to taxes owed by the taxpayers, then it would be necessary to decide whether the provision of the Homestead Exemption allowing a forced sale of the property "for taxes" should be interpreted to involve only taxes that arise from the land in issue. This case, however, does not involve a forced sale. The property has been sold with the consent of the owners. The Homestead Exemption does not discuss whether a lien can attach.

The Department points out that the Tenth Circuit in *Tillery v. Parks*, 630 F.2d 775 (10th Cir. 1980), recognized a distinction between the attachment of a tax liability lien to an interest in a homestead and the ability to force a sale of the same homestead. In *Tillery*, a husband defaulted on his obligation to pay withholding taxes as a responsible officer for two corporations. The Internal Revenue Service filed federal tax liens for the unpaid taxes against all of the husband's property, including his interest in the homestead. The wife brought an action to quiet title to the homestead, arguing that, under *Hershberger*, the tax lien should be discharged against the homestead property. The court noted that the narrow issue it had to decide was "whether federal tax liens arising solely through the tax liability of one's spouse may attach to his interest in the homestead of both spouses in Oklahoma." 630 F.2d at 776. The court concluded that they could.

In deciding *Tillery*, the court noted that state law determines whether the taxpayer has property or rights to property to which

a tax lien may attach. 630 F.2d at 776 (citing *Aquilino v. United States*, 363 U.S. 509, 513, 4 L. Ed. 2d 1365, 80 S. Ct. 1277 [1960]). The husband in *Tillery* owned an undivided one-half interest in the property. Like Kansas, the Oklahoma homestead law placed restrictions upon the joint owners of a homestead and their creditors for the protection of the family. 630 F.2d at 776. These restrictions, however, do not negate the proprietary interest of the taxpayer. The court noted that, for a federal tax lien to attach, it did not matter how extensive the property interests of the taxpayer were or what restrictions existed on the enjoyment of the rights by the property owner. 630 F.2d at 777.

The wife in *Tillery* argued that the decision in *Hershberger* precluded attachment of a federal tax lien on homestead property. The Tenth Circuit disagreed, pointing out that the issue in *Hershberger* dealt solely with foreclosure and did not concern the propriety of attaching a lien to a spouse's interest in the homestead property at issue. *Tillery*, 630 F.2d at 777. The Tenth Circuit concluded that the district court erred in *Tillery* by not drawing a distinction between the attachment of a federal tax lien and the enforcement in a foreclosure action. The court noted that, under § 7403 of the Internal Revenue Code, the court *may* decree a sale of any property subject to a tax lien, which implies the exercise of equitable discretion in deciding whether to order foreclosure, under § 6321 of the Internal Revenue Code. The court has no discretion on whether a lien shall attach to the property of a delinquent taxpayer. 630 F.2d at 777. In fact, the court in *Tillery* noted that the decision in *Hershberger* recognized the validity of the lien against the husband's interest in his Kansas homestead property. Although the lien attached, the question in *Hershberger* was whether it necessarily followed that foreclosure was mandated. The court concluded that the lien properly attached to the husband's undivided one-half interest in his Oklahoma homestead. *Tillery*, 630 F.2d at 777-78.

The question of whether these tax liens could have been foreclosed under the Homestead Exemption, which is the issue repeatedly argued by the parties, does not determine whether the lien of the Department attached. A lien is an encumbrance upon property as security for payment of a debt. 51 Am. Jur. 2d, Liens § 1, p. 142. This court has described a lien as follows:

"A lien is a hold or claim which one has upon the property of another as security for a debt or charge, as a tie that binds the property to a debt or claim for its satisfaction, as a right to possess and retain property until a charge attaching to it is paid or discharged, as a charge imposed upon specific property by which it is made security for the performance of an act, and as being synonymous with a charge or encumbrance upon a thing. *Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955)." *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 962, 685 P.2d 866 (1984).

The Kansas Legislature, in K.S.A. 79-3617, specified that to collect delinquent sales or compensation taxes, as were owed here, the Department must issue a warrant directed to the sheriff of any county to levy upon and sell the real and personal property of the taxpayer found within the county. After receipt of the warrant, the sheriff is required to file a copy of the warrant with the clerk of the district court. K.S.A. 79-3617 states, in pertinent part:

"The amount of such warrant so docketed shall thereupon become a lien upon the title to, and interest in, the real property of the taxpayer against whom it is issued. The sheriff shall proceed in the same manner and with the same effect as prescribed by law with respect to executions issued against property upon judgments of a court of record, and shall be entitled to the same fees for services."

Later, the statute continues by providing as follows:

"If a warrant is returned, unsatisfied in full, the secretary or the secretary's designee shall have the same remedies to enforce the claim for taxes as if the state of Kansas had recovered judgment against the taxpayer for the amount of the tax. No law exempting any goods and chattels, land and tenements from forced sale under execution shall apply to a levy and sale under any of the warrants or upon any execution issued upon any judgment rendered in any action for sales or compensating taxes. The secretary or the secretary's designee shall have the right at any time after a warrant has been returned unsatisfied, or satisfied only in part, to issue alias warrants until the full amount of the tax is collected." K.S.A. 79-3617.

The validity of a lien created by statute depends upon complying with the terms of the statute. *Clark Lumber Co. v. Passig*, 184 Kan. 667, 673, 339 P.2d 280 (1959). Here, the parties do not dispute that the Department complied with the provisions of the statute in appropriately filing the tax lien. Therefore, because this court must rely upon the record as submitted by the parties in reaching its decision on this certified question, we should

assume that the warrant was appropriately filed as required by K.S.A. 79-3617, which created a lien upon the title of the real property of the taxpayer.

Marcia Shook had "title to, and interest in the real property" in question. Therefore, the unpaid sales tax, penalty, and interest became a lien upon her interest in the real property jointly owned by the Shooks on July 6, 1984.

The answer to the question certified by the United States District Court is yes.

HOLMES, C.J., and HERD, J., concur in the result.