Vernon V. BURRUS and Letha L. Burrus, Husband and Wife, Plaintiffs,

v.

OKLAHOMA TAX COMMISSION, Defendant–Appellant,

Internal Revenue Service, Defendant–Appellee.

No. 94–6044.

United States Court of Appeals, Tenth Circuit.

July 7, 1995.

Robert B. Struble, Asst. General Counsel (Stanley P. Johnston, Deputy General Counsel, and David Hudson, General Counsel, with him on the briefs), Oklahoma Tax Com'n, Oklahoma City, OK, for plaintiff-appellant.

Patricia M. Bowman, Atty. (Loretta C. Argrett, Asst. Atty. Gen., David English Carmack and Robert L. Baker, Attys., on the brief), Tax Div., Dept. of Justice, Washington, DC, for defendant-appellee.

Before HENRY and McKAY, Circuit Judges, and VRATIL,* District Judge.

* Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by

McKAY, Circuit Judge.

■ This appeal presents a very narrow legal question: Do the Oklahoma Homestead laws, *see* Okla. Const. art. XII, § 2 (1992); Okla.Stat. tit. 31, § 1 (1981), which prevent Oklahoma from foreclosing on the principal residence of a debtor to satisfy a state tax lien but do not prevent the federal government from foreclosing on the same property to satisfy federal tax obligations, create an exception to the general rule ("first in time, first in right") that a prior state tax lien which is otherwise choate receives priority over a subsequently filed federal tax lien? The district court answered this question in the affirmative. We reverse.

The facts of this case are not in dispute. The Burruses owed taxes to both the state of Oklahoma and to the federal government. The Oklahoma Tax Commission filed two tax warrants with the county clerk in the county where the Burruses resided, one in 1986, one in 1988. These tax warrants became liens on all property of the Burruses. The IRS assessed its own penalties against Mr. and Mrs. Burrus in 1989, and thereby also created a lien on all of the Burruses' property. On December 31, 1992, the Plaintiffs sold their residence, netting just over $35,000.00. Oklahoma claims that it is entitled to satisfy its lien (roughly $13,700) from this sum. The IRS, denying the priority of the state lien, lays claim to all of the money as partial payment of the Burruses' federal tax debts, which exceed $55,000.

■ Undoubtedly, if this case did not involve the sale of homestead property, the Oklahoma lien would be entitled to priority over the federal lien. *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). State tax liens generally receive priority over federal tax liens if they are perfected, or choate, prior to the time the federal lien arises. In *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), the Supreme Court set forth the general three-part requirement for choateness: "when the identity of the lienor, the property subject to the lien, and the

designation.

amount of the lien are established." *Id.* at 84, 74 S.Ct. at 369. There is no dispute that these three requirements are met in this case. The question is whether there is now a fourth requirement for choateness. The IRS urges that there exists, in addition to the tripartite test of *New Britain,* a fourth requirement of enforceability. That is, not only must a lien have been choate in theory, it must also have been capable of actual enforcement prior to the creation of the federal lien. The IRS argues that Oklahoma cannot meet this additional element of enforceability because the Homestead Act prohibited the state from foreclosing on the Burruses' home to satisfy the state tax debt. The district court, relying on language in our decision in *T.H. Rogers Lumber Co. v. Apel,* 468 F.2d 14, 18 (10th Cir.1972), agreed.

Oklahoma counters that the district court has misconstrued the language in *T.H. Rogers* and that our cases stand not for the proposition that there is an additional enforceability requirement, but rather for the principle that liens must not be contingent or unperfected. Oklahoma asserts that it had done everything necessary to perfect its liens and that its inability to foreclose immediately upon the filing of those liens did not make them inchoate. Reviewing *T.H. Rogers* in light of the recent Supreme Court decision *IRS v. McDermott,* —— U.S. ——, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), we agree with the Oklahoma Tax Commission.

In finding in favor of the IRS, the district court relied heavily on language found in *T.H. Rogers:* "This requirement (of choateness) can be met only if the claim is final; that is, not subject to a judicial contest as to the amount, and also *only if it is enforceable by summary proceedings.*" 468 F.2d at 18 (emphasis added). We believe that this language adds no additional element to the *New Britain* test, but merely restates the proposition that a lien must be perfected. That is, we interpret *T.H. Rogers* to mean not that the lien must be immediately enforceable by summary proceedings at the time of filing, but rather that at the time of enforcement, whenever that should occur, a lienholder may satisfy its debt by resort to a summary pro-

ceeding because the lien will be both choate and perfected.

This interpretation is bolstered by the Supreme Court's opinion in *McDermott.* In *McDermott,* a state lien on all real property "owned at the time or thereafter acquired" had been filed prior to a similarly worded federal tax lien. The issue resolved by the Court was whether the state lien held priority over the federal lien with respect to property acquired after the filing of both liens. The Supreme Court held that the state lien had not been perfected prior to the federal lien because the lien could not have attached to property not yet in the debtor's possession and the property subject to the lien therefore had not been "established" at the time of filing. *See* —— U.S. at ——, 113 S.Ct. at 1529 n. 5. *McDermott* makes clear that if there is an additional requirement for perfection or choateness, it is attachment to an identifiable piece of property rather than enforceability. *See McDermott,* —— U.S. at ——, 113 S.Ct. at 1529 ("[A]ttachment to particular property was also an element of what we meant by 'perfection' in *New Britain.*").

This does not end our inquiry, however, as the district court also held that the Oklahoma liens were incapable of *attaching* to the homestead property. The tax commission challenges this conclusion, despite the fact that Oklahoma law specifically states that homestead properties shall be "exempt from attachment." Okla.Stat.Ann. tit. 31, § 1. Concededly, a literal reading of the statute would seem to compel the district court's conclusion. However, read in context, we believe it is clear that the term "attachment" as used in the Oklahoma statute has a different meaning from the meaning of attachment for tax lien priority purposes.

■ The law dictionaries reveal that there are two distinct meanings for the term "attachment." For example, *Ballentine's Law Dictionary* (3d ed. 1969) provides two different definitions: first, "A provisional remedy for the collection of a debt, which is incidental to an action against the debtor ... for the purpose of having the property available in satisfaction under execution and sale upon a judgment obtained against the debtor in the

action;" and, second, "The actual attaching, that is, the seizure and disposition of the debtor's property under a writ of attachment." *Black's Law Dictionary* (6th ed. 1990) illustrates the same dichotomy. One definition of attachment is: "A remedy ancillary to an action by which plaintiff is enabled to acquire a lien upon property or effects of defendant for satisfaction of judgment which plaintiff may obtain." Another meaning offered in *Black's* is: "The act or process of taking, apprehending or seizing ... property...." Read in context, it seems clear that the Oklahoma statute uses the word "attachment" in this second sense of the word, while it is the primary meaning that is relevant in the tax lien context.

◼ The clear import of the Homestead Exemption is to prevent the family home from being sold out from under the family.[1] Thus, tit. 31, § 1 states that such property shall be "exempt from attachment or execution and every other species of forced sale for the payment of debts." This statute is the codification of Okla. Const. art. XII, § 2, which provides simply that "the homestead of the family shall be protected from forced sale for the payment of debts." Viewed in this context, it is plain that the Oklahoma statute refers to "attachment" as "a species of forced sale"—a physical act of seizure. There is nothing in the homestead law which would suggest that the state may not "attach" a lien on the homestead as a "provisional remedy" subject to the future sale of the property which would have no immediate impact on the family living within. Thus, the presence of the word "attachment" in the statute does not, in our view, prevent the tax commission's lien from "attaching," within the meaning of Oklahoma Law or Supreme Court precedent, at the time of filing.

This interpretation of the term "attachment" is consistent with Tenth Circuit prece-

dent. This circuit has previously distinguished between the ability to enforce a lien through foreclosure and the attachment of that lien under the Oklahoma homestead laws. *Tillery v. Parks,* 630 F.2d 775 (10th Cir.1980). *Tillery* makes clear that a lien can attach to homestead property in Oklahoma even if the homestead laws prevent the lien from being executed. *Id.* at 776–78. Although *Tillery* involved a federal tax lien, we can see no reason why the reasoning of *Tillery* should not apply in this context—both the state and federal statute purport to create a lien upon "all property" held by the tax debtor. *Compare* 26 U.S.C. § 6321 with Okla.Stat. tit. 68, §§ 231, 234 (1981).[2]

We find additional support for our decision in *Homestead Land Title Co. v. United States,* 249 Kan. 569, 819 P.2d 660 (1991) (interpreting the interaction of the Kansas homestead and lien statutes, which are analogous to those at issue here). The Kansas Supreme Court, analyzing very similar facts, held that even though a Kansas state tax lien might not be enforceable, it could nonetheless attach to homestead property. "The question of whether these tax liens could have been foreclosed under the Homestead Exemption ... does not determine whether the lien of the Department (of Revenue) attached." *Id.,* 819 P.2d at 664.

In the absence of any compelling precedent to the contrary, we believe the Oklahoma courts would follow the Tenth Circuit and the Kansas Supreme Court and hold that a properly filed state tax lien does "attach" to homestead property for purposes of determining priority in bankruptcy even though it cannot be enforced at the time of filing.

Accordingly, the judgment of the district court is REVERSED, and the case is RE-

---

**1.** *See Kelough v. Neff,* 382 P.2d 135, 136 (Okla. 1963) ("The right to claim a homestead exemption is a right which the head of a family may assert to prevent sale ... at any time prior to the sale of the premises."); *Ward v. McKee,* 130 Okla. 203, 266 P. 465, 466 (1928) ("It was evidently the intention of the makers of the Constitution and the legislators, to protect the homestead of the heads of families against forced sale....").

**2.** The Supreme Court has endorsed the distinction between foreclosure on and attachment of a tax lien in the homestead context. *United States v. Rodgers,* 461 U.S. 677, 690–91, 702 n. 31, 103 S.Ct. 2132, 2140–41, 2147 n. 31, 76 L.Ed.2d 236 (1983).

MANDED with instructions to give priority to the lien of the Oklahoma Tax Commission.