(40 P.3d 329)
No. 86,603

S. A. HARMS and LAWANDA HARMS, *et al.*, *Plaintiffs/Appellants*, v.
VEVA NELL DAVIS BURT, *et al.*, *Defendants*, and JOSEPH
WRIGHT, VICTORIA WRIGHT, and CAPITOL FEDERAL SAVINGS
AND LOAN ASSOCIATION, *Intervenors/Appellees*.

Opinion filed February 15, 2002.

*Edgar Wm. Dwire*, of Malone, Dwire and Jones, of Wichita, for the appellants.

*Kurt A. Harper*, of Sherwood & Harper, of Wichita, for the appellees.

Before BEIER, P.J., BRAZIL, S.J., and JOHN W. WHITE, District Judge, assigned.

BRAZIL, J.: Appellants S. A. Harms and LaWanda Harms, *et al.*, obtained a judgment against defendant Veva Burt and were proceeding with a writ of execution on Burt's former residence. Appellees Capitol Federal Savings and Loan Association (Capitol Federal) and Joseph and Victoria Wright intervened and filed a motion claiming their purchase money interests, though acquired later in time, were entitled to be equitably subrogated to a position senior to the appellants' judgment lien. The district court invoked the doctrine of equitable subrogation and reordered the lien priorities on the property.

This appeal involves the priority of liens in a writ of execution action concerning a residential property in Wichita, once owned by Veva Burt, who is not a party to this appeal and has since filed for bankruptcy protection. The district court invoked the doctrine of equitable subrogation to elevate the appellees' interests above two prior judgment liens, one of which is held by the appellants in this case. The parties tried the case to the district court based on stipulated facts. These facts are condensed as follows:

Three lawsuits resulted in two separate judgments entered of record in Sedgwick County against Veva Burt and several other defendants. S.A. and LaWanda Harms and Rickey and Crystal Harms consolidated their cases and were awarded one judgment totaling $150,000, which was offset by a payment of $70,000. The Harms' judgment was entered on February 22, 1999.

The second judgment entered against Burt was in favor of Kenneth and Kaye McMullin in the amount of $10,190.69, plus court costs. The judgment was entered October 26, 1999. The McMullins are not a party to this appeal but may be affected when deciding relative lien priorities.

On the dates both judgments were entered, Burt was the record owner of the Wichita residence. She acquired title from her revocable trust by transfer deed recorded April 1, 1998. At the time

of transfer, she also executed and delivered a $147,000 mortgage to Green Tree Financial Servicing Corporation. This first "Green Tree" mortgage was also recorded on April 1, 1998. Burt later obtained a second mortgage from an entity related to Green Tree in the amount of $15,000, which was recorded May 25, 1998.

To recap, as of October 26, 1999, Burt's residence was subject to: a first mortgage for $147,000 recorded April 1, 1998; a second mortgage recorded May 25, 1998; the Harms' judgment lien of $150,000, offset by a $70,000 payment entered February 22, 1999; and the McMullins' judgment lien entered October 26, 1999.

On November 7, 1999, the Wrights submitted an offer to Burt to purchase the Wichita residence for $121,500. On December, 8, 1999, the title company prepared the title commitment which did not show the Harms' and McMullins' judgment liens on the property. The omission occurred because the examiner checked company records but failed to check original records or recorded pleadings.

On December 16, 1999, a writ of execution was filed on the Harms' judgment against Burt's residence. The next day, Conseco Finance Servicing Corporation (Conseco), which had already declared Burt in default on one of the Green Tree mortgages, agreed to accept $110,000 to release the two mortgages on the property if the sale closed by December 31, 1999. The very next day, Burt accepted Wright's offer to purchase the residence. On December 21, 1999, Wright applied for a mortgage from Capitol Federal.

On December 29, 1999, the purchase/sale of Burt's residence was closed. Prior to closing, the title company updated its title commitment, again without checking the appropriate court records. The Wrights obtained a $61,500 mortgage from Capitol Federal and paid the balance of the purchase price and closing costs in cash ($61,189.03). Capitol Federal disbursed these purchase monies to Conseco, and Conseco eventually filed its release of the Green Tree mortgages on May 25, 2000.

Also on December 29, 1999, the Sedgwick County Sheriff received an Order For Sale on the Burt residence. On January 31, 2000, the Sheriff returned the order, noting that Burt was not

found and was no longer a resident at the address provided. Sixty days later, Burt filed a Chapter 7 bankruptcy petition in Texas.

On April 11, 2000, the Wrights received written notice that the judgment liens entered against Burt prior to the December sale/purchase of the residence remained unsatisfied. The Wrights failed to respond. On August 4, 2000, the Harms filed a writ of general execution. Three days later, the writ declaring the property seized by the district court was posted at Burt's former residence. Mr. Wright received service at the same time.

The district court allowed the Wrights and Capitol Federal to intervene in the execution proceedings. The Harms filed a motion to join both the abstract and title companies, which the district court overruled. The Harms then filed a motion to determine lien priorities and the parties submitted the case to the district court on stipulated facts. The district court invoked the doctrine of equitable subrogation and determined that the interests of Capitol Federal and the Wrights were superior to the judgment liens and that the Harms could not proceed with levy on the residence. The district court did not distinguish between the purchase money mortgage interest of Capitol Federal and the purchase money cash equity interest of the Wrights.

## DOCTRINE OF EQUITABLE SUBROGATION

The application of an equitable doctrine rests within the sound discretion of the trial court. *Bankers Trust Co. v. United States of America*, 29 Kan. App. 2d 215, 218, 25 P. 3d 877 (2001). However, when a case is submitted to the trial court on stipulated facts, an appellate court has the same opportunity as the trial court to consider the evidence and to determine de novo what the facts establish. *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 536, 809 P. 2d 538 (1991).

In their reply brief, appellants rely on *Bankers Trust*. They contend the district court erred by applying the doctrine of equitable subrogation and determining their interests were subordinate to the interests of Capitol Federal and the Wrights.

The *Bankers Trust* court held:

"The doctrine of equitable subrogation may not be applied to relieve a party who negligently takes a lien on or an interest in property which is subject to prior liens of record of which that party had either actual or constructive notice. To apply equitable subrogation under those circumstances would be tantamount to relieving that party of a condition attributable to a failure to exercise ordinary care for his, her, or its own interests. Equitable subrogation will not apply in favor of such party." 29 Kan. App. 2d at 222.

Capitol Federal argues that Bankers Trust or its predecessor had actual knowledge· of the lien, whereas Capitol Federal and the Wrights only had constructive notice. It argues that although the *Bankers Trust* case states that the doctrine of equitable subrogation should not apply to parties with "actual or constructive" knowledge of the lien, it is merely dictum as to cases involving parties with constructive knowledge only. While the parties in *Bankers Trust* had both actual and constructive knowledge, we conclude that the holding in that case should extend to cases relying on constructive notice only.

As the court stated in the early case of *Kuhn v. Bank*, 74 Kan. 456, 458, 87 Pac. 551 (1906):

"If, as it has uniformly been decided, a purchaser of either real or personal property is bound to take notice of the facts affecting the title to the property which the records of the county show, and which records the statutes provide shall be public notice, then it is quite immaterial whether or not Kuhn had actual knowledge of the existence of the judgments. In the absence of conduct on the part of the person who afterward asserts the facts shown by the records to the prejudice of the purchaser which prevents an examination of the records or induces the purchaser not to make such examination, it is negligence for a purchaser of either real or personal property to make the purchase without ascertaining the facts shown by the records which may affect the title to be acquired. In the absence of such fraudulent conduct the purchaser will be presumed to have bought with knowledge of all the facts which the records at the time would have disclosed. Equity cannot be invoked to relieve one from the consequences of his own negligence. (*Hargis v. Robinson*, 63 Kan. 686, 66 Pac. 988 [1901].)"

Notwithstanding Capitol Federal's argument that the majority trend in other states is contrary, the holding in *Kuhn* is still valid in Kansas. In Kansas, courts charge parties with constructive notice of public records. See *Bi-State Dev. Co., Inc., v. Shafer, Kline, & Warren, Inc.*, 26 Kan. App. 2d 515, 519, 990 P.2d 159 (1999) (applying K.S.A. 58-2222). The judgment docket places parties and

their agents who use reasonable care and diligence on notice of potential title problems. See *Carnation Co. v. Midstates Marketers, Inc.*, 2 Kan. App. 2d 236, 238-39, 577 P.2d 827 (1978).

## THE TITLE INSURANCE ENTITIES

The Harms filed a motion to join both the abstract and title companies, which the district court overruled. On appeal, they claim the title insurance entities are contingently necessary parties under K.S.A. 60-219(a) because just adjudication and complete relief cannot be granted in their absence.

This issue is reviewed under an abuse of discretion standard. *McHorse v. Eaks*, 27 Kan. App. 2d 817, 7 P.3d 1272 (2000) (adopting abuse of discretion standard for reviewing K.S.A. 60-219). We are reluctant to conclude that the trial court abused its discretion when it denied the Harms' motion to join, but neither are we able to agree with the panel in *Bankers Trust* that the presence or absence of insurance will always be irrelevant to a trial court's consideration of whether to apply the doctrine of equitable subrogation. Given the right facts, the presence or absence of title insurance may well be relevant. We recognize that other jurisdictions have, for example, been hesitant to apply equitable subrogation where a title insurance company was negligent in failing to discover an intervening tax. See *First Federal Sav. Bank of Wabash v. U.S.*, 118 F.3d 532, 534 (7th Cir. 1997).

We reverse and remand with directions to enter judgment restoring the priority of the junior lienholders, the Harms and the McMullins. The McMullins, though a nonappealing party, are entitled to the benefit of the appellate holding since their rights are interwoven. *Shade*, 248 Kan. at 542 (recognizing general rule that nonappealing parties are bound by lower court decision but applying exception when interests of nonappealing lienholders are interwoven with appealing lienholders).

Reversed and remanded with directions.