(184 P.3d 273)
No. 98,031

AMERICAN GENERAL FINANCIAL SERVICES, INC., *Appellant*, v. JEFF L. CARTER, GINA L. CARTER, BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, KANSAS, *Defendants*, and THE STATE OF KANSAS, *Appellee*.

Opinion filed May 16, 2008.

*Thomas J. Lasater* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*Jay D. Befort* and *Karyn D. Lopez*, of Kansas Department of Revenue Legal Services Bureau, of Topeka, for appellee.

Before BUSER, P.J., MALONE and MCANANY, JJ.

MCANANY, J.: This is a real estate foreclosure action brought by the purchase money mortgagee. At issue is the distribution of the proceeds following the foreclosure sale. In this appeal we consider the relative priorities of a lien for unpaid sales taxes and a later purchase money mortgage given by the defaulting taxpayers to acquire the property which is later sold in foreclosure. The district court found that the tax lien has priority. We conclude that the mortgage given to secure the loan used by the taxpayer to purchase the property has priority and, therefore, reverse the decision of the district court.

In November 2001, the Kansas Department of Revenue (KDR) filed a tax warrant in Reno County District Court against Jeff L. Carter and others for failure to pay sales tax in the amount of $266,550.23. The record does not disclose whether during the period November 2001 to June 2004 Carter owned any real estate in Reno County to which the tax lien would have attached. In any

event, in June 2004, Carter and his wife, Gina, (the Carters) purchased a home in Hutchinson. They financed the purchase through American General Financial Services, Inc. (American). As evidence of the debt, they gave American their promissory note in the principal amount of $65,681.37, secured by a purchase money mortgage on the home they were buying.

In October 2004, the Carters obtained an additional $15,000 from American, which was evidenced by another promissory note and secured by a second mortgage on the Carters' home.

In April 2005, KDR filed two additional tax liens for unpaid sales and withholding taxes in the amounts of $97,421.40 and $4,199.77, respectively.

The Carters defaulted in the payment of real estate taxes on their home. They also defaulted on their promissory notes to American. Accordingly, in March 2006 American commenced this foreclosure action, naming the Board of County Commissioners of Reno County and the State of Kansas as additional interested parties.

The Carters defaulted in the foreclosure action, and the court foreclosed on both mortgages and entered money judgments against the Carters. Following a hearing on the issue of the relative priorities of the lien creditors, the property was sold at a foreclosure sale and the court ordered that the proceeds be disbursed in the following priority: (1) KDR's initial sales tax lien, (2) American's first mortgage, (3) American's second mortgage, and (4) KDR's additional sales and withholding tax liens. American appeals the court's order giving KDR's initial sales tax lien priority over American's purchase money mortgage. Our research discloses that apparently this is an issue of first impression in Kansas.

Since the matter was submitted to the district court on stipulated facts, our consideration of those facts is de novo. *In re Harris Testamentary Trust*, 275 Kan. 946, 951, 69 P.3d 1109 (2003). Our review of the district court's conclusions of law is also de novo. *Crawford v. Hrabe*, 273 Kan. 565, 570, 44 P.3d 442 (2002). Likewise, we have unlimited review of the relevant statutes. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

Our initial task in considering a statute is to determine the legislature's intent in enacting it. Since the legislature expressed its intent through the words of the statute, we give effect to the plain and unambiguous meaning of those words. See *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). To that end, we give ordinary words their ordinary meanings without adding words not found in the statute or ignoring words found in the statute. *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006). Further, we try to construe statutes in a manner that avoids unreasonable results, since we presume the legislature did not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). Finally, we do not consider parts of an enactment in isolation, but rather consider and construe all parts of an act together in order to reconcile the different provisions to the extent possible so that they are consistent, harmonious, and make sense. See *McIntosh v. Sedgwick County*, 282 Kan. 636, 642, 147 P.3d 869 (2006).

KDR claims its initial tax lien against the Carters' residence takes priority over American's first mortgage because it was filed years before American's first mortgage. American claims its first mortgage lien has priority because it is a purchase money mortgage, *i.e.*, a mortgage securing a loan to the Carters for them to purchase their home, the mortgaged asset. K.S.A. 58-2305 provides: "A mortgage given by a purchaser to secure the payment of purchase money shall have preference over a prior judgment against such purchaser."

K.S.A. 2007 Supp. 79-3617 describes the procedure for collecting unpaid or delinquent state taxes and imposing tax liens on real property:

"The secretary of revenue . . . shall issue a warrant . . . directed to the sheriff . . . to levy upon and sell the real and personal property of the taxpayer found within the sheriff's county to satisfy the tax . . . and to return such warrant to the secretary . . . and pay to the secretary . . . the money collected . . . not more than 90 days from the date of the warrant. . . . The sheriff shall, within five days, after the receipt of the warrant file with the clerk of the district court of the county a copy thereof, and thereupon the clerk shall either enter in the appearance docket the name of the taxpayer mentioned in the warrant the amount of the tax or portion of it, interest and penalties for which the warrant, is issued

and the date such copy is filed and note the taxpayer's name in the general index. . . . The amount of such warrant so docketed shall thereupon become a lien upon the title to, and interest in, the real property of the taxpayer against whom it is issued. The sheriff shall proceed in the same manner . . . prescribed by law with respect to executions issued against property upon judgments of a court of record . . . .

". . . If a warrant is returned, unsatisfied in full, the secretary . . . shall have the same remedies to enforce the claim for taxes as if the state of Kansas had recovered judgment against the taxpayer for the amount of the tax."

American directs us to the section of K.S.A. 2007 Supp. 79-3617 which provides that "the secretary [of KDR]. . . shall have the same remedies to enforce the claim for taxes *as if the state of Kansas has recovered judgment* against the taxpayer for the amount of the tax." (Emphasis added.) From this American reasons that if KDR's tax lien is treated as a judgment and American is a purchase money mortgagee, K.S.A. 58-2305 gives its mortgage lien priority over KDR's tax lien.

KDR argues that K.S.A. 58-2305 does not apply because its tax liens, which are not the product of any ruling by a court but are merely registered by the clerk of the district court on its records, are not judgments. *Bank of Kansas v. Davison*, 253 Kan. 780, 785, 861 P.2d 806 (1993), supports the proposition that these tax liens are not judgments. Nevertheless, the court in *Bank of Kansas* observed that these liens are "treated in the same manner as judgments." 253 Kan. at 785. Thus, while they do not have all the attributes of judgments (*e.g.*, they cannot be invoked to bar litigation of a claim under the doctrine of collateral estoppel), for collection purposes they are treated as judgments. 253 Kan. at 785.

There is nothing in K.S.A. 2007 Supp. 79-3617 indicating that the legislature intended to abrogate common-law priority rules. As observed in *In re Estate of Mettee*, 10 Kan. App. 2d 184, 187, 694 P.2d 1325, *aff'd* 237 Kan. 652, 702 P.2d 1381 (1985), when the legislature has intended to abolish a common-law rule, it has done so in an explicit manner. In the absence of such an expression of legislative intent, the common law remains part of our law. See *In re Estate of Roloff*, 36 Kan. App. 2d 684, 689, 143 P.3d 406 (2006).

*Harms v. Burt*, 30 Kan. App. 2d 263, 40 P.3d 329, *rev. denied* 274 Kan. 1111 (2002), cited by KDR, is instructive in the distinc-

tions that arise when comparing its facts to those presently before us. In *Harms*, the homeowner, Burt, had several outstanding Sedgwick County judgments against her, each of which was a lien against her Wichita home. Thereafter, the Wrights contracted to purchase Burt's home. When the Wrights' title insurance company failed to note the presence of these prior judgment liens, the Wrights obtained a loan from Capital Federal Savings and Loan Association, gave Capital Federal a purchase money mortgage, and used the loan proceeds to buy Burt's home. Later, one of Burt's judgment creditors executed on his judgment and attached the Wrights' home. In the litigation that ensued, the district court invoked the equitable subrogation doctrine to give the Capital Federal purchase money mortgage priority. On appeal, this court reversed, finding that equitable subrogation was not available since the existence of the outstanding judgment liens that had attached to the property would have been readily apparent to the Wrights in the course of their title search. 30 Kan. App. 2d at 267-68. The court relied upon *Kuhn v. Bank*, 74 Kan. 456, 458, 87 Pac. 551 (1906), for the proposition that, absent fraudulent conduct that induced the purchaser not to examine the county records,

" 'the purchaser will be presumed to have bought with knowledge of all the facts which the records at the time would have disclosed. Equity cannot be invoked to relieve one from the consequences of his own negligence. [Citation omitted].' " *Harms*, 30 Kan. App. 2d at 267.

As Hesiod observed in his epic poem *Theogony*, "right timing is in all things the most important factor." In *Harms*, the judgment liens attached to the subject property well before Burt sold the property to the Wrights. In the case now before us, KDR's judgment lien did not attach to the subject property until the closing of the real estate transaction. The Carters were not selling property subject to a judgment lien. They were purchasing property to which the lien could then attach.

In *Mutual Benefit Life Insurance Co. v. Cross Town East, Inc.*, No. 63,829, unpublished opinion filed December 22, 1989, slip op. at 5-6, *rev. denied* 246 Kan. 768 (1990), this court stated:

"The purchase money mortgage holds a special priority position over other liens and encumbrances arising through the mortgagor. It is well established that a

purchase money mortgage executed contemporaneous to the deed of purchase takes precedence over all other claims or liens attaching to the property through the mortgagor, including claims antedating the execution of the mortgage. 55 Am. Jur. 2d, Mortgages § 348. Our Supreme Court has stated that a mortgage to secure the purchase money which is given 'simultaneously with a deed for the property and as a part of the same transaction takes precedence over *all existing and subsequent claims and liens of every kind against the mortgagor*.' (Emphasis added.) *Noll v. Graham,* 138 Kan. 676, Syl. ¶ 4, 27 P.2d 277 (1933). Additionally, K.S.A. 58-2305 provides that a purchase money mortgage 'shall have preference over a prior judgment against' the purchaser."

This is consistent with the Restatement (Third) of Property-Mortgages § 7.2(b) (1996), which provides that a purchase money mortgage, regardless of whether it is recorded, "has priority over any mortgage, lien, or other claim that attaches to the real estate prior to the purchaser's acquisition of title to the real estate."

Why is this? K.S.A. 2007 Supp. 79-3617 states a tax warrant becomes a lien on the taxpayer's title and interest in real property. However, "[a] judgment lien can attach only to whatever the interest the debtor has in the property, and if the debtor has no interest in the property, then no lien can attach." 46 Am. Jur. 2d, Judgments § 344, p. 665. There was no time when KDR's lien could attach to the property before the purchase money mortgage was created. KDR's tax lien, which is treated for collection purposes as a judgment, did not attach to the property until after the purchase money mortgage was created.

In *Mortgage Co. v. Winters,* 94 Kan. 615, 619, 146 Pac. 1012 (1915), the court held:

"One who executes a purchase-money mortgage is not regarded as obtaining the title and then placing an incumbrance on it. He is deemed to take the title charged with the incumbrance, which has priority even over preexisting claims. And a mortgage given to a third person to obtain the money used in buying the property is entitled to the same preference."

Stated another way, at the time of closing the buyer does not acquire title to the property and *then* the purchase money mortgage attaches to and becomes a lien on the property. To the contrary, at closing the buyer acquires title to the property *already encumbered* by the purchase money mortgage. Until the Carters bought their home, there was no real property to which KDR's tax lien

could attach. At the moment the Carters acquired title to their home, it was already encumbered by American's purchase money mortgage. At that point, KDR's tax lien attached to the property, but this occurred *after* the creation of American's purchase money mortgage encumbrance. Thus, American's first mortgage has priority over the Carter's other liens.

This analysis is in harmony with the positions taken by other states. See *ALH Holding Co. v. Bank of Telluride*, 18 P.3d 742, 746-47 (Colo. 2000) (purchase money mortgages have priority over all other liens because execution of the deed and mortgage are considered simultaneous acts and title never rests in the purchaser unencumbered by the mortgage); *Whayne Supply Co. v. Com. of Ky. Rev. Cab.*, 925 S.W.2d 185, 186-87 (Ky. 1996) (purchase money security interest in equipment is superior to a tax lien against the purchaser's after-acquired property because there was no time when the purchaser had unencumbered title to the equipment—the equipment was encumbered when the purchaser took title); *Friarsgate, Inc. v. First Fed. Savings & Loan*, 317 S.C. 452, 456, 454 S.E.2d 901 (Ct. App. 1995) (purchase money mortgage has priority because a mortgage is simultaneously transmitted with the conveyance of the interest in the property to the purchaser; the deed and mortgage take effect at the same time); *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487, 492-93 (Tenn. 1981) (purchase money security interest in a car has priority over a tax lien against defendant because at no time did defendant own the car outright, nor did defendant have an interest in the car to which a tax lien could attach).

KDR argues that this approach excuses a prospective buyer's lender from exercising due diligence prior to the closing of a real estate transaction, contrary to the holdings in *Harms* and *Kuhn*. This is not so. As noted earlier, in *Harms* Capital Federal was not entitled to rely on equitable subrogation because the outstanding judgment liens that had attached to the property would have been readily apparent in the course of an adequate title search. The judgment liens in *Harms* had attached to property owned by the *seller* before title was transferred to the Wrights. See 30 Kan. App. 2d at 267-68. Similarly, in *Kuhn*, the buyer purchased land that

was already encumbered by three mortgages and two judgments; in the dispute following execution on these liens, the court found that the buyer was negligent in purchasing the property without an adequate examination of county records which would have disclosed these encumbrances. 74 Kan. at 458.

Unlike in *Harms* and in *Kuhn*, the liens at issue here were against the *buyer*, not against property of the seller. Thus, an examination of the seller's title is not at issue. KDR argues that due diligence also requires an examination of the county records for judgments and liens against the buyers. Had American done so, it would have determined that KDR's lien had not yet attached to the property the Carters were buying. KDR's lien would have only attached to the property after title was transferred to the Carters, and when title to the property was transferred to them it would have *already be encumbered* by the purchase money mortgage, giving American the priority it expected.

This outcome is in harmony with the fact that KDR had no expectation that it would be repaid out of any specific property, since there is no indication in the record that Jeff Carter owned any real estate when KDR filed its tax lien. Without American's purchase money financing, the Carters would not have acquired the property and KDR would not have had any property to look to for satisfaction of its claims.

Finally, KDR argues the homestead exemption in the Kansas Constitution contemplates the superiority of tax liens over purchase money mortgages. In Kansas, a homestead is exempt from forced sale under any process of law but is not exempt from a sale for taxes, payment of obligations contracted for the purchase of the premises, or for erection of improvements. Kan. Const. art. 15, § 9. KDR asserts that this order in which the exceptions to the general rule are listed establishes their order of priority, and as a result tax liens have priority over purchase money mortgages. There is nothing in this homestead provision that indicates that the listing of these exceptions is in the order of priority. The cases cited by KDR do not address this issue. *Homestead Land Title Co. v. United States*, 249 Kan. 569, Syl. 819 P.2d 660 (1991), simply stands for the proposition that "the sales tax lien does attach to real property

which is subject to a claim of homestead exemption under Article 15, § 9 of the Kansas Constitution." If *Bank of Kansas* supported KDR's position as it claims, the court would not have needed to engage in any analysis of the chronology of lien filings; the mere fact that the State asserted a tax lien would have been enough to carry the day. We do not construe Article 15, § 9 of the Kansas Constitution as establishing an order of lien priorities different from the priorities established at common law.

American's purchase money mortgage has priority over KDR's tax lien. Since the district court found otherwise, we must reverse the district court's order in this respect and remand the case for further proceedings consistent with this opinion.