No. 89,179

IN THE MATTER OF THE JOHN P. HARRIS TESTAMENTARY TRUST.

69 P.3d 1109

Opinion filed June 6, 2003.

*Greg L. Musil,* of Shughart Thomson & Kilroy, P.C., of Overland Park, argued the cause, and *Christine M. Graham* and *John S. Schmidt,* of the same firm, were on the brief for appellant trustees of the John P. Harris Testamentary Trust.

No appearance by appellee.

The opinion of the court was delivered by

DAVIS, J.: The trustees of the John P. Harris Testamentary Trust (Trust) brought this action to reform the Trust. All interested parties including all beneficiaries entered their appearances and filed their written consents to the proposed reformation. The trustees appealed from a favorable ruling by the district court requesting by motion that the appeal be decided by this court instead of the Court of Appeals based upon the holding in *Commissioner v. Estate of Bosch*, 387 U.S. 456, 18 L. Ed. 2d 886, 87 S. Ct. 1776 (1967). We transferred the appeal on motion of the trustees. Our jurisdiction is based on K.S.A. 20-3018(c).

John P. Harris died on April 13, 1969. His will was admitted to probate. Among other provisions, his will created the John P. Harris Testamentary Trust, appointing his son, John G. Harris, The First National Bank of Hutchinson, and Peter Macdonald as trustees. The corpus of this trust constituted the remainder of Harris' estate less certain specific bequests.

Income from the trust property was to be paid to Harris' wife, Rosalie, and his son, John G. Harris, in equal shares. In the event of Rosalie's death, her share of the Trust income was to be paid to the natural children of John G. Harris, Kathy Sue and Carol Lynn, and then to their survivors or the survivors of them. In the event of John G. Harris' death, his share of the trust income was to be paid to his natural children, and then to their survivors or the survivors of them. The trust will terminate 20 years and 9 months after the death of the survivor of Kathy Sue or Carol Lynn, or any survivors of John G. Harris' other natural children. Upon termination, the corpus of the trust is to be paid to Kansas Philanthropies, Inc.

## Proceedings Before the District Court

On May 23, 2002, the trustees of the Trust, pursuant to Chapter 59 of the Kansas Statutes Annotated, filed their petition for reformation of trust. There is no mention of the third trustee, and we assume that Peter Macdonald is deceased or for some reason no longer serves as a trustee. John G. Harris individually and as trustee filed a separate entry of appearance, waiver of notice, and consent to reformation of trust, which gave his consent to the reformation

as trustee and beneficiary under the Trust. The First National Bank, as a trustee of the Trust; the granddaughters of John P. Harris, Kathy Sue (Harris) Beshears and Carole Lynn (Harris) Fitzgerald; and Kansas Philanthropies, Inc. also filed similar entries of appearance, waivers, and consents on the same day. The entire probate file is not included in this record on appeal, but Harris' will containing the Trust which the trustees seek to reform, together with some of the proceedings in the original probate proceeding, are included in the record.

In their petition, the trustees requested three changes in the Trust. First, the trustees requested a change in their discretionary powers over the corpus of the Trust property. They claimed that a mistake was made in drafting the Trust and that "[r]eformation of a trust is appropriate where a mistake occurs that prevents the intent of the testator from being carried out," citing Restatement (Second) of Trusts § 333 (1957) and its Comments. Second, the trustees requested another change in their discretionary powers over corpus of the Trust property by changing a word from "shall" to "may," thereby preserving the original intent of John P. Harris in protecting the corpus from creditors of the beneficiaries. The trustees claimed that a recent decision from this court justifies the change and further claimed that such a change "would be in the best interest of the Trust and its beneficiaries to reform the language . . . to preserve the discretionary nature of the principal distribution clause." Finally, the trustees requested that the district court authorize the trustees to divide the Trust into three separate shares to enable the Trust to qualify as a qualified Subchapter S Trust (QSST). The trustees contended that the failure to include flexibility for such a change was a mistake and the change "is in the best interest of the beneficiaries."

There has never been opposition to the proposed changes; all interested parties agreed and encouraged the district court to adopt the requested changes. The district court granted all relief requested by the trustees with the following brief comments of the court:

"3. The allegations of the Petition are true.

"4. The relief therein sought is in the best interest of the Trust and the beneficiaries thereof and that each of the interested parties named in the Petition have consented to the proposed reformation as evidenced by the Entries of Appearances, Waivers of Notice and Consents signed by each of them and filed contemporaneously with the Petition."

The court granted the first two proposed changes by adopting the following language suggested by the trustees:

"(e) Notwithstanding anything hereinabove contained to the contrary, if at any time while the trust herein created is in force, any financial emergency arises in the affairs of any of the primary beneficiaries of such trust, or and if the independent income of any of such beneficiaries and all other means of support are insufficient for the support of such beneficiary, in the judgment of the Trustees, the Trustees *may* shall pay over to such beneficiary out of the corpus of the trust, at any time and from time to time, such sum or sums as the Trustees shall deem necessary or appropriate in their sole discretion; *provided, however, any distributions made pursuant to this provision can only be made for the support of such beneficiaries as such term is defined in Section 2041 of the Internal Revenue Code of 1986, as amended.*" (Emphasis added.)

Consistent with their third request, the district court authorized the trustees to create "three separate and independent shares" in the one trust, authorizing the trustees to "segregate assets in kind so that the fair market value of the assets in each share on the date of the division is equal to the above fractional amounts." Each beneficiary was ordered to receive income from his or her respective share and discretionary distributions of principal were to be made from the beneficiary's respective share. Distributions from the principal were limited to the ascertainable standard set forth in the modified version of Paragraph (e). All other terms of the Trust were left unchanged.

The trustees filed an appeal from the district court's final order to the Court of Appeals pursuant to K.S.A. 60-2102(a)(4). The trustees moved pursuant to K.S.A. 20-3017 and Supreme Court Rule 8.02 (Kan. Ct. R. Annot. 55) to transfer their appeal to this court. The grounds set forth in the motion suggest that the IRS is not bound by a reformation of a trust by any authority other than the highest court of the state, citing *Bosch*, 387 U.S. at 465. The trustees further note that in the recent decision of *In re Estate of Keller*, 273 Kan. 981, 46 P.3d 1135 (2003), we transferred an appeal in-

volving the construction of a will. Kathy Sue (Harris) Beshears, Carole Lynn (Harris) Fitzgerald, and Kansas Philanthropies, Inc. filed letters indicating they did not intend to file briefs or argue before this court because, as in the district court, they supported the trustees on appeal.

Application of the Kansas Uniform Trust Code

The district court entered its decision in this case on May 23, 2002. Approximately 6 months after its decision, Kansas SB 297 became effective January 1, 2003. Senate Bill 297 is a substantial adoption of the Uniform Trust Code (UTC). See Kansas Uniform Trust Code, K.S.A. 2002 Supp. 58a-101 *et seq.* (KUTC). K.S.A. 2002 Supp. 58a-1106(a)(1) provides that except as otherwise provided "[t]his act applies to all trusts created before, on, or after its effective date." K.S.A. 2002 Supp. 58a-1106(a)(3) further provides:

"(3) this act applies to judicial proceedings concerning trusts commenced before its effective date unless the court finds that application of a particular provisions of this act would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision of this act does not apply and the superseded law applies."

K.S.A. 2002 Supp. 58a-1106(a)(4) provides that "any rule of construction or presumption provided in this act applies to trust instruments executed before the effective date of the act unless there is a clear indication of a contrary intent in the terms of the trust."

We conclude that application of the KUTC, K.S.A. 2002 Supp. 58a-101 *et seq.*, would not substantially interfere with the effective conduct of the judicial proceedings before this court or prejudice the rights of the parties. Moreover, the rules of construction provided in the KUTC apply to the instrument we are asked to construe. The facts are not in dispute, and all parties have entered their appearances before the district court and request that the proposed changes be adopted and affirmed by this court. Nothing in the record or in the KUTC prevents application of the code to this case.

The trustees suggest that the KUTC applies, and they urge this court to apply it. Other than very general suggestions, the trustees do not offer analysis of how the KUTC may support their position.

The trustees do argue that the appropriate standard of review in this case is one of abuse of discretion. At the same time, the trustees acknowledge that a de novo review may also be appropriate in cases to be decided on the basis of documents and stipulated facts. Appellate courts have de novo review of cases decided on the basis of documents and stipulated facts. See *Ward v. Ward*, 272 Kan. 12, 30 P.3d 1001 (2001). The question before this court is whether Kansas law supports the actions of the district court in its reformation of the Trust. We conclude that the appropriate standard of review is de novo which calls for an unlimited review by this court. See *Neeley v. Neeley*, 26 Kan. App. 2d 924, 996 P.2d 346 (2000).

Senate Bill 297, which was enacted by the Kansas Legislature in 2002 and became effective on January 1, 2003, adopted the UTC. Kansas became the first state to enact the UTC because Kansas was the first state to appoint a committee to study the UTC. English, *The Kansas Uniform Trust Code*, 51 Kan. L. Rev. 311 (2003). English's article provides an excellent overview of the KUTC with some attention to how its enactment changes existing Kansas law. The UTC is the first national codification of the law of trusts. The main stimulus to the commissioners' drafting of the UTC is the greater use of trusts in recent years in family estate planning and commercial transactions in the United States and internationally. See UTC, Prefatory Note, 7C U.L.A. 28 (Supp. 2000); English, *The Kansas Uniform Trust Code*, 51 Kan. L. Rev. 311; English, *The Uniform Trust Code (2000): Significant Provisions and Policy Issues*, 67 Mo. L. Rev. 143 (2002); Law Summary, *Get Your Dead Hands Off Me: Beneficiaries' Right to Terminate or Modify a Trust Under the Uniform Trust Code*, 67 Mo. L. Rev. 443 (2002).

The questions involving reformation and modification of the Trust under the KUTC are ones of first impression. As indicated by English in his Kansas Law Review article, "[t]he primary source of trust law in Kansas and in most other states is the Restatement of Trusts and the multivolume treatises by Scott and Bogert, sources that fail to address numerous practical issues and which on others sometimes provide insufficient guidance." 51 Kan. L. Rev. at 312. Testimony before the Senate Judiciary Committee on January 22, 2002, regarding SB 297 notes that the bill embodies the

UTC recommended by the National Conference of Commissioners on Uniform State Laws. The Kansas Comments indicate how each section conforms or changes existing Kansas trust law, and the UTC Comments further explain each section.

We also note a marked difference under the KUTC between reformation and modification. Reformation under K.S.A. 2002 Supp. 58a-415 is available when the terms of a trust fail to reflect the donor's original particularized intention. The mistaken terms are then reformed to reflect this specific intent. Modification, under the uniform code and specifically under K.S.A. 2002 Supp. 58a-416, is authorized where the terms of the trust to be changed meet the settlor's tax-saving objectives and the resulting terms, particularly the dispositive provisions, are not inconsistent with the settlor's probable intent. See K.S.A. 2002 Supp. 58a-412.

Where a district court reaches the right result, its decision will be upheld even though the trial court relied upon different grounds for its action or assigned different or erroneous reasons for its decision. *Bergstrom v. Noah,* 266 Kan. 847, 875-76, 974 P.2d 531 (1999); *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 110, 118, 936 P.2d 714 (1997).

### The First Change: Limitation of Discretionary Powers over Distribution of Trust Corpus to an Ascertainable Standard

The testator's son, John G. Harris, is a beneficiary as well as a trustee of the Trust. The trustees allege that discretionary powers regarding the distribution of the corpus may cause an estate tax problem for trustee John G. Harris. According to their argument, the entire corpus of the Trust may be included in his estate upon his death unless the trustees' discretionary powers under Paragraph (e) are limited by an ascertainable standard pursuant to Internal Revenue Code (IRC) provision, 26 U.S.C. § 2041(b)(1)(A) (2000). Paragraph (e) is as follows:

"(e) Notwithstanding anything hereinabove contained to the contrary, if at any time while the trust herein created is in force, any financial emergency arises in the affairs of any of the primary beneficiaries of such trust, or if the independent income of any of such beneficiaries and all other means of support are insufficient for the support of such beneficiary, in the judgment of the Trustees, the Trustees

shall pay over to such beneficiary out of the corpus of the trust, at any time and from time to time, such sum or sums as the Trustees shall deem necessary or appropriate in their sole discretion."

In order to establish the need for such a change, the trustees point out that a decedent's gross estate includes the value of property subject to a general power of appointment. 26 U.S.C. § 2041(a)(2). Section 2041(b)(1)(A) defines a general power of appointment by excluding the following:

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

If it is determined that the power given is not a general power of appointment, the corpus would be excluded from John G. Harris' estate consistent with his father's intent. However, according to the powers in Paragraph (e) of the Trust, John G. Harris possesses the power to distribute the corpus in the event of a financial emergency of a beneficiary or if the financial means of a beneficiary are insufficient to support such beneficiary. Thus, the trustees argue that without an ascertainable standard governing the distribution of the corpus, there is a risk that the entire corpus will be included in John G. Harris' estate upon his death contrary to the intent of the testator. In order to insure favorable tax treatment, the trustees seek to reform the power in Paragraph (e) by expressly bringing the discretionary powers within the safe harbor of 26 U.S.C. § 2041(b)(1)(A).

In support of the first change, the trustees contend that Harris intended that the Trust assets not be taxed by inclusion in the estate of his son. Instead, Harris sought by his will to avoid such taxes and that the remaining assets of the Trust upon termination be paid to the charitable organization of Kansas Philanthropies, Inc. The trustees argued before the district court and now before this court that a typographical error occurred during the drafting of the will that caused Paragraph (e) not to be limited to an ascertainable standard to avoid inclusion of the corpus in John G. Harris' estate. The proposed modified version of Paragraph (e) of the Trust is set

forth in full below, which accomplishes Harris' intent and thereby avoids adverse tax consequences:

"(e) Notwithstanding anything hereinabove contained to the contrary, if at any time while the trust herein created is in force, any financial emergency arises in the affairs of any of the primary beneficiaries of such trust, or and if the independent income of any of such beneficiaries and all other means of support are insufficient for the support of such beneficiary, in the judgment of the Trustees, the Trustees may shall pay over to such beneficiary out of the corpus of the trust, at any time and from time to time, such sum or sums as the Trustees shall deem necessary or appropriate in their sole discretion; *provided, however, any distributions made pursuant to this provision can only be made for the support of such beneficiaries as such term is defined in Section 2041 of the Internal Revenue Code of 1986, as amended."* (Emphasis added.)

The trustees point to the language in John P. Harris' will as evidence that he intended to maximize existing tax advantages by providing for a significant bequest to his surviving spouse thereby freeing the remainder for funding the Trust. Harris left property to his surviving spouse all of which qualifies for the marital deduction as an outright bequest. However, he expressly limited any powers granted to his trustees in order to maximize tax benefits:

"Any power, duty or discretionary authority granted to my executors or the Trustees of the trust created hereunder shall be void to the extent that their actions shall cause my estate to lose all or any part of the tax benefit afforded by the marital deduction under the Federal Estate Tax Laws."

The trustees argue that the self-imposed limitations to maximize benefits available under the IRC applies with equal force to the discretionary powers granted his trustees with reference to his son and grandchildren, especially where the ultimate disposition upon termination of the Trust is a charitable organization.

The trustees also rely upon evidence from the scrivner of Harris' last will and testament. In an affidavit dated March 29, 2002, attorney William Chalfant states that he first became acquainted with Harris in 1933 or 1934. Chalfant did legal work for Harris' corporation beginning in 1956, and began doing personal legal work for Harris in 1964. The personal work included drafting Harris' will. According to Chalfant, Harris' primary goal was to provide for his spouse and dependents while minimizing the estate taxes for

him and his family. Chalfant addresses powers granted to the trustees in Paragraph (e) of the Trust:

"7. Affiant knows, based on his conversations with John P. Harris, that it was not his intention that the assets held in the trust be included in the Estate of his son, John G. Harris, as it would result in a significant estate tax liability. Such a result is contrary to the clear intention of John P. Harris to minimize and/or eliminate any potential estate tax liability."

Chalfant says that the phrase, "any financial emergency arises in the affairs of any of the primary beneficiaries of such trust" should be limited by the phrase, "for the support of such beneficiary." In order to effect such a limitation, Chalfant suggested that "and" should have followed the "or" and the "or" should be deleted as reflected in the above proposed changes to Paragraph (e). Chalfant concludes by saying that he "believes that modification of the phrase shown above to limit the authority of the Trustees to make distributions under said provision to 'support,' or other ascertainable standard, is what was intended by John P. Harris and would be appropriate."

Trustee John G. Harris suggests that the Trust Paragraph (e) should be reformed by not only changing the "or" to "and," but also by adding language to insure the limitation of powers is consistent with the provisions of the 1986 Internal Revenue Code as reflected in the above proposed changes to Paragraph (e).

According to John P. Harris' estate plan as evidenced by his last will, he was aware of and sought to avoid excessive estate taxes through planning. He provided for his wife by outright devises and bequests that would qualify for the marital deduction then available under the IRC. He devised real estate as well as household goods and automobiles to his wife. He then devised $400,000 in cash or securities reduced by any sums of any gifts of cash or securities made by him to his wife subsequent to their marriage. By these provisions, Harris sought to maximize the available marital deduction as evidenced by the partial federal tax return in the record. The remainder of his estate, reduced by specific bequests to named beneficiaries and further reduced by payment of all estate and inheritance taxes chargeable against the estate, make up the Trust we now consider.

As indicated above, Harris expressed his intent to favor his wife with one-half of the income from the Trust for her life and provided for distribution of corpus to his wife in the following paragraph (d):

"(d) Notwithstanding anything hereinabove contained to the contrary, if at any time while the trust herein created is in force, any financial emergency arises in the affairs of my said wife, Rosalie Harris, of if the independent income of my said wife and all other means of support available to her, including her share of the trust income hereunder, are insufficient for her support in the manner to which she was accustomed during our married life, in the sole judgment of the Trustees, the Trustees shall pay or use, for my said wife's support and reasonable comfort, and for her care, including hospital, medical and nursing expenses, such part of the trust principal as shall be reasonably required for such purposes. At all times I desire that the trustees be liberal with the encroachment upon the principal or corpus of the trust for the purposes hereof."

In Paragraph (e), Harris provided for other beneficiaries (son and grandchildren) with almost identical language.

Paragraphs (d) and (e) make it apparent that Harris attempted to limit the discretion of the trustees with regard to the invasion of the corpus. The purpose of the limitation is evidenced by two other provisions of the trust. The first is contained in paragraph 10:

"Any power, duty or discretionary authority granted to my executors or the Trustees of the trust created hereunder shall be void to the extent that their actions shall cause my estate to lose all or any part of the tax benefit afforded by the marital deduction under the Federal Estate Tax Laws."

The second is contained in Paragraph (c) which provides that upon termination

"the property and share and interest in property which constitutes the corpus of the trust shall be paid and distributed to the Kansas Philanthropies, Inc., Hutchinson, Kansas, said property and money to be expended, spent and used as may be determined by the governing body of such charitable corporation."

The clauses of Harris' will establish that Harris was acutely aware of the tax consequences in adopting his estate plan. The clauses also establish that Harris intended that the corpus be preserved for final distribution to charity, subject to the limited powers to invade the corpus for the beneficiaries. These clauses as well as the entire

will support the conclusion that his intent was not only to exclude the corpus from his wife's estate upon her death but also to exclude the corpus from his son's estate upon his son's death. Inclusion of the corpus in his wife's estate upon her death deprives him of the marital deduction and fails to preserve a large portion of the remainder of his estate for his ultimate charitable distribution. Inclusion of the corpus in his son's estate upon his son's death frustrates his tax plan by diminishing his estate through payment of substantial estate taxes upon his son's death, thereby, failing to preserve the bulk of the remainder of his estate for charitable purposes. Moreover, the scrivener's affidavit establishes that a paramount consideration for Harris in devising his estate plan was to achieve tax savings. Under these circumstances, we conclude that there is clear and convincing evidence supporting the trial court's reformation of Paragraph (e) of Harris' trust.

K.S.A. 2002 Supp. 58a-415 provides the basis for affirming the district court's reformation of Paragraph (e). It provides:

"The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."

The trustees allege that a mistake was made in Paragraph (e). They proved before the district court by clear and convincing evidence that Harris' intent was to limit the invasion of the corpus to an ascertainable standard with reference to all beneficiaries of the Trust. The Trustees have demonstrated the need under existing tax law for the changes proposed in Paragraph (e). The proposed changes do not interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties. See K.S.A. 2002 Supp. 58a-1106(a)(3). All beneficiaries have agreed with the proposed changes. We, therefore, affirm the reformation of Paragraph (e) entered by the district court.

Two additional points must be noted. First, the same result may be reached by the following provisions of K.S.A. 2002 Supp. 58a-416 regarding the Trust modification to achieve Harris' tax objectives:

"To achieve the settlor's tax objectives, the court may modify the terms of a trust in a manner that is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect."

Second, the precise situation present in Paragraph (e) of the Trust was anticipated by the UTC in § 814. However, in adopting the UTC § 814, Kansas omitted the tax-curative provision of the UTC that imposes an ascertainable standard on language that might otherwise constitute a general power of appointment. See English, 51 Kan. L. Rev. at 321 n.80; compare K.S.A. 2002 Supp. 58a-814 with UTC § 814. According to the official Kansas Comment to the KUTC under this section, the Kansas drafting committee struck the tax-curative provision of the UTC because there was a difference of views among the committee members on its inclusion.

## The Second Change: Preserving the Discretionary Power

The trustees requested the second change based on *State ex. rel. Secretary of Social and Rehabilitation Services v. Jackson*, 249 Kan. 635, 822 P.2d 1033 (1991). In *Jackson*, this court held that the use of the word "shall" rather that "may" in a discretionary power can defeat the discretionary nature of the power and may enable creditors to reach trust assets subject to the power. 249 Kan. at 642. The trustees argue that it was not Harris' intent that creditors of Trust beneficiaries would be able to reach the principal of the Trust as illustrated by the spendthrift provisions of Paragraph 7 (g).

The provisions of the Trust support a conclusion that Harris was concerned about creditors' ability to anticipate a beneficiary's right in and to the corpus of the Trust. Subparagraph (g) provides express evidence for such concern:

"(g) The trust beneficiary shall not have any right, power or authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate, or in any other manner affect or impair their beneficial and legal right, title, interest, and estate in and to the trust income and/or principal, nor shall the right, title, interest and estate of such beneficiaries be subject to the rights and claims of creditors of said beneficiaries, nor subject nor liable to any process of law or court."

The trustees demonstrated a need for changing the word "shall" to "may" in Paragraph (e) of the Trust.

The following provisions of K.S.A. 2002 Supp. 58a-412 provide authority for changing the word "shall" to "may" in Paragraph (e) of the Trust as requested by the trustees and granted by the district court:

"(a) The court may modify the administrative or dispositive terms of a trust . . . if, because of circumstances not anticipated by the settlor, modification . . . will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

This change granted by the district court is in the administrative terms of the Trust. The holding in *Jackson* could not have been anticipated by Harris, and the change furthers the purposes of the Trust. The change granted is consistent with Harris' probable and actual intent. We, therefore, affirm the decision of the district court in this second change.

### The Third Change: Modification of Trust to Meet Requirements of S Corporation Shareholder

The trustees seek to qualify the Trust for Subchapter S corporation treatment under the IRC, a substantial tax benefit to the Trust as well as the beneficiaries. Petitioners again rely on a mistake by the scrivener in failing to include a provision granting the Trustees the flexibility to divide the Trust into shares which would have enabled the Trust to qualify as a qualified subchapter S trust (QSST) without the reformation of the court. According to the petition, the Trust is not permitted under the IRC to be a shareholder in a Subchapter S corporation because the Trust has more than one income beneficiary. However, the trustees contend that substantially separate and independent shares of one trust are treated as separate trusts under the IRC and qualify as a QSST pursuant to 26 U.S.C. § 1361(d) (2000). Thus, the trustees sought authorization from the district court to create "three separate and independent shares" within the existing Trust which would "enable the trust to qualify as a QSST." The respective shares of each beneficiary would remain unchanged with granddaughter Kathy Sue (Harris) Beshears retaining a one-fourth interest, granddaughter Carole Lynn (Harris) Fitzgerald retaining a one-fourth interest, and son John G. Harris retaining a one-half interest.

The trustees requested authority to divide the Trust into three separate shares for each Trust beneficiary in order to qualify for Subchapter S treatment under the IRC. The trustees based their request for reformation on a mistake, claiming that the scrivener failed to include a provision granting the trustees the flexibility to divide the Trust into shares which would have enabled the Trust to qualify as a QSST. In support of their claim, the trustees rely upon Harris' intent to minimize estate tax liability combined with the seemingly technical nature of this modification of the Trust. We note that the scrivener's affidavit does not mention the proposed change or a failure to provide the flexibility in the Trust for such division.

The trustees provided a clear rationale for the necessity of their proposed change. The IRC governs the type of trusts which qualify as shareholders in S corporations. According to the trustees, a shareholder in a S corporation must be an individual. 26 U.S.C. § 1361(b)(1)(B). However, there is an exception for trusts defined at 26 U.S.C. § 1361(c)(2), which are expressly permitted to be shareholders in S corporations. The QSST is expressly included in the group of trusts permitted to be shareholders in S corporations at 26 U.S.C. § 1361(c)(2). 26 U.S.C. § 1361(d)(1)(A). However, the following specific requirements for a QSST prevent the Harris' trust from qualifying:

"(3) For purposes of this subsection, the term 'qualified subchapter S trust' means a trust—
   (A) the terms of which require that—
   (i) during the life of the current income beneficiary, there shall be only 1 income beneficiary to the trust,
   (ii) any corpus distributed during the life of the current income beneficiary may be distributed only to such beneficiary,
   (iii) the income interest of the current income beneficiary in the trust shall terminate on the earlier of such beneficiary's death or the termination of the trust, and
   (iv) upon the termination of the trust during the life of the current income beneficiary, the trust shall distribute all of its assets to such beneficiary, and
   (B) all of the income (within the meaning of section 643(b)) of which is distributed (or required to be distributed) currently to 1 individual who is a citizen or resident of the United States." 26 U.S.C. § 1361(d)(3).

The trustees argue that the Trust in its present form, will not qualify as a QSST because there is presently more than one individual beneficiary receiving distributions from the Trust. They further point out that the IRS will generally recognize the prospective effect of a state court modification of a trust to qualify as a QSST. See Rev. Rul. 93-79, 1993-2.

In order meet the requirements of a QSST, the district court ordered the following modifications:

"B. The Trustees are authorized to create within the Trust three separate and independent shares, one-fourth (¼) for the benefit of Kathy Sue (Harris) Beshears, one-fourth (¼) for the benefit of Carole Lynn (Harris) Fitzgerald, and one-half (½) for the benefit of John G. Harris, to enable the Trust to qualify as a QSST. The Trustees shall be authorized to segregate assets in kind so that the fair market value of the assets in each share on the date of the division is equal to the above fractional amounts.

"C. The Trustees are directed to segregate and administer each share in accordance with the existing terms and provisions of the Trust as follows: (a) each beneficiary would continue to receive all income generated by his or her respective share; (b) discretionary distributions of principal to any such beneficiary shall be made from such beneficiary's respective share only; and (c) any such discretionary distributions of principal are limited to an ascertainable standard as provided by the reformed provision referred to in Paragraph A above."

The record does not provide clear and convincing evidence to support reformation of the Trust to include powers to divide it into three separate trusts. However, the following provisions of K.S.A. 2002 Supp. 58a-417 of the KUTC provide specific authority for affirming the third change ordered by the district court:

"(a) After notice to the qualified beneficiaries, a trustee may combine two or more trusts into a single trust or divide a trust into two or more separate trusts, if the result does not impair rights of any beneficiary or adversely affect achievement of the purposes of the trust. The trustee may make a division under this section by:

(1) Giving written notice of the division, not later than the 30th day before the date of a division under this subsection, to each qualified beneficiary; and

(2) executing a written instrument, acknowledged before a notary public or other person authorized to take acknowledgments of conveyances of real estate stating that the trust has been divided pursuant to this section and that the notice requirements of this subsection have been satisfied.

"(b) A trustee, in the written instrument dividing a trust, shall allocate trust property among the separate trusts on a fractional basis by identifying the assets

and liabilities passing to each separate trust, or on any other reasonable basis. The trustee shall allocate undesignated trust property received after the trustee has divided the trust into separate trusts in the manner provided by the written instrument dividing the trust, or, in the absence of a provision in the written instrument, in a manner determined by the trustee."

The modification reached by the district court in authorizing division of the Trust into three separate shares does not impair the rights of any beneficiary or adversely affect achievement of the purposes of the Trust. All parties of interest support and encourage the proposed change. Finally, the change authorized by the district court is in accord with the provisions of K.S.A. 2002 Supp. 58a-417 in all respects. Moreover, K.S.A. 2002 Supp. 58a-416 supports such modification because it achieves Harris' tax objectives and is consistent with Harris' probable intention. We, therefore, affirm the district court order authorizing the trustees to divide the Trust into three separate shares for each Trust beneficiary in order to qualify for Subchapter S tax treatment under the IRC.

Affirmed.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned█