NOT DESIGNATED FOR PUBLICATION

No. 126,880

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHARLES M. TORRENCE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed May 16, 2025. Affirmed.

*Mark Sevart,* of Derby, for appellant, and *Charles M. Torrence*, appellant pro se.

*Kristi D. Allen,* assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.

PER CURIAM: After being convicted for various crimes related to a series of robberies, Charles M. Torrence was sentenced to over 60 years in prison. In April 2017, a panel of this court affirmed his convictions on direct appeal, and Torrence filed his first K.S.A. 60-1507 motion seeking postconviction relief in April 2018. Another panel of this court affirmed the district court's denial of that first 60-1507 motion. In a continued effort to attack his convictions, Torrence filed yet another 60-1507 motion in October 2022, which is the subject of this appeal.

Torrence attempts—but ultimately fails—to overcome the general prohibition against untimely 60-1507 motions by demonstrating manifest injustice through a claim of actual innocence. Torrence's claim of actual innocence relies on conclusory claims largely based on evidence that is not new because it was available at the time of trial. Torrence's 60-1507 motion is untimely, and he failed to make a procedural showing of actual innocence to demonstrate manifest injustice to overcome that untimeliness and warrant an evidentiary hearing. The district court is therefore affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, the State charged Torrence with a variety of crimes related to a series of robberies in Wichita. The parties agreed to consolidate the cases for trial, and in January 2015 the jury convicted Torrence on all counts including attempted aggravated robbery, criminal possession of a firearm, and four counts of aggravated robbery. The district court sentenced Torrence to a controlling prison term of 725 months, and a panel of this court affirmed Torrence's convictions and sentences on direct appeal. *State v. Torrence*, No. 114,546, 2017 WL 1535137 (Kan. App. 2017) (unpublished opinion). The Kansas Supreme Court denied Torrence's petition for review in February 2018, and the mandate was issued the following month.

In April 2018, Torrence filed a pro se K.S.A. 60-1507 motion, which the district court summarily denied. This court affirmed the district court's summary denial of the motion. *State v. Torrence*, No. 120,077, 2020 WL 6930802 (Kan. App. 2020) (unpublished opinion). While Torrence's first 60-1507 motion and the district court's order summarily denying it are not included in the record on appeal, the Court of Appeals' opinion described Torrence's claims on appeal:

"In this appeal, Torrence essentially identifies three issues: (1) his appointed lawyers' inadequate representation of him leading up to and during the jury trial in his

2

direct criminal case, with various subsidiary claims of specific instances of inadequacy; (2) lack of full representation at the competency hearing; and (3) the inability to raise particular issues in the direct appeal because of the court rules limiting the length of his brief." *Torrence*, 2020 WL 6930802, at *2.

In October 2022, Torrence filed a second 60-1507 motion—which is the subject of this appeal—in which he alleged actual innocence and attacked the accuracy of the jury's verdict:

"(a) The following demonstrate that [Torrence] is actually innocent of the crimes charged against him:

"i. [N]ew reliable evidence, in the form of November 29, 2013, Walmart surveillance video, showing the actual robbery of the Walmart/Dollar General stores the State charged [Torrence] with having committed.

"ii. [T]he ambiguity which exists as to whether the jury's guilty verdicts in [Torrence]'s case rest on the allegations in the Complaint/Informations that [Torrence] committed one or more of the crimes with either a firearm, knife, or 'an object' 'the user intended to convince a person that it is a dangerous weapon and that person reasonably believed it to be a 'dangerous weapon.'

"(b) [Torrence]'s new reliable evidence, in the form of recently discovered February 5, 2013, Walmart surveillance video, and attached Exhibit #1, are proof that [Torrence]'s constitutional rights were violated by the State's knowing failure to divulge the existence of an agreement alleged accomplice [L.B.] had with the State; combined with the State's failure to correct the prosecutor's false statement there was no existence of an agreement for leniency for [L.B.] in exchange for her testimony in [Torrence]'s case.

"(c) [Torrence]'s new reliable evidence show that the State knowingly used false and misleading evidence, in the form of [M.T.], [C.B.], a police fabricated replacement gun, and perjured testimony, to withhold, and by having withheld, favorable evidence from [Torrence] and the jury which demonstrate [Torrence] was actually innocent of unlawful

3

possession of a firearm, and of having possessed or used that same han[d]gun (State's 22F) in an aggravated robbery or attempt thereof.

"(d) New reliable evidence, in the form of recordings made by [A.R.M.] on Sedgwick County Jail's inmate phones on June 20th, June 21st, and July 4th, 2021, and attached Exhibit #11, demonstrate that a manifest injustice occurred by the strong potential that [Torrence]'s conviction and sentences are further predicated on the State's use of tainted evidence impermissibly tampered with by Custodians of Evidence for [the] State of Kansas; namely, [R.W.] or 'others'. As such, [Torrence] was not 'duly' convicted in violation of the 6th, 13th, and 14th Amendments to the United States Constitution."

Torrence also attached 13 exhibits to his motion in support of his allegations. Torrence alleged he had not previously presented these grounds for relief because he was unaware of the evidence until after his convictions and that the State intentionally withheld exculpatory evidence:

"[M]y 'new reliable evidence' did not come to my attention until post-trial. On top of that, the State knowingly withheld exculpatory and impeachment evidence from me and concealed it behind false and misleading evidence, including, but not limited to, perjured testimony. Therefore, my new reliable evidence could not have been produced at trial through the exercise of reasonable diligence."

Torrence also alleged that systemic corruption prevented him from bringing the claims earlier:

"[Torrence] has said all along that his arrest, convictions, and sentencing are predicated on City of Wichita/Sedgwick County corruption. (See, e.g., Sentencing Transcript, held on June 10, 2015, pgs. 21-22). The problem was, [Torrence] did not have the new reliable evidence he [has] now, demonstrating Wichita's systemic corruption in the criminal justice system."

4

The district court summarily denied Torrence's motion, generally reasoning it was successive, conclusory, and raised claims that should have been brought in his direct appeal or first 60-1507 motion. The district court ultimately concluded Torrence's "aforementioned dated and stale exhibits along with other exhibits, which summarily allege conspiratorial and corrupt actions by the government, do not justify or merit any relief."

Torrence subsequently filed a timely postjudgment motion challenging the district court's decision, but the record on appeal does not contain any ruling on that motion. Torrence thereafter filed a notice of appeal. This court ordered the parties to show cause as to why the appeal should not be dismissed because the postjudgment motion was still pending but did ultimately retain jurisdiction over the appeal. This court also granted Torrence's request to file a pro se supplemental brief in addition to the brief filed by his court-appointed appellate counsel.

DISCUSSION

The only issue on appeal is whether the district court erred in summarily denying Torrence's second 60-1507 motion. A 60-1507 motion is a mechanism by which a movant can collaterally attack their conviction or sentence because "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2024 Supp. 60-1507(b); *Rowland v. State*, 289 Kan. 1076, Syl. ¶ 1, 219 P.3d 1212 (2009). When evaluating a 60-1507 motion, a district court has three options: (1) determine the motion, files, and case records conclusively show the prisoner is not entitled to relief and deny the motion summarily; (2) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held; if the court then determines there is no substantial issue, the court

5

may deny the motion; or (3) determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). This court's standard of review depends on which of these options the district court applied. 311 Kan. at 578.

When, as here, the district court summarily denies the motion without any hearings, this court is in just as good of a position as the district court to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief. K.S.A. 2024 Supp. 60-1507(b); *Noyce v. State*, 310 Kan. 394, 398, 447 P.3d 355 (2019); Kansas Supreme Court Rule 183(f) (2025 Kan. S. Ct. R. at 237-38). Additionally, a defendant seeking relief pursuant to a 60-1507 motion has an obligation to bring all available claims in a single motion within the one-year timeframe required by the statute. K.S.A. 2024 Supp. 60-1507(f); *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022). Finally, "[a] K.S.A. 60-1507 motion cannot serve as a vehicle to raise an issue that should have been raised on direct appeal, unless the movant demonstrates exceptional circumstances excusing earlier failure to bring the issue before the court." *State v. Brown*, 318 Kan. 446, Syl. ¶ 3, 543 P.3d 1149 (2024); *State v. Dickey*, 301 Kan. 1018, 1030, 350 P.3d 1054 (2015) ("[A] defendant is generally required to raise all available issues on direct appeal."). The movant's burden to prove they are entitled to an evidentiary hearing includes the burden to demonstrate that the motion overcomes the procedural hurdles that prevent a district court's review of the merits, such as untimeliness and successiveness. See, e.g., *State v. Robertson*, 309 Kan. 602, 609, 439 P.3d 898 (2019).

A defendant can overcome the one-year time limit for bringing a 60-1507 motion by showing manifest injustice would result from preventing the defendant from bringing the claim. K.S.A. 2024 Supp. 60-1507(f)(2); *Mitchell*, 315 Kan. 156, Syl. ¶ 5 ("K.S.A. 60-1507 motions are time-barred if filed more than one year after the case is final unless a movant can establish manifest injustice."). Such manifest injustice can be shown

6

through a colorable claim of actual innocence, which requires the defendant "to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2024 Supp. 60-1507(f)(2). While the district court summarily denied his current 60-1507 motion as successive and conclusory, this court's review focuses on timeliness. See *In re Harris Testamentary Trust*, 275 Kan. 946, 952, 69 P.3d 1109 (2003) ("Where a district court reaches the right result, its decision will be upheld even though the trial court relied upon different grounds for its action or assigned different or erroneous reasons for its decision.").

I. TIMELINESS

Generally, a 60-1507 motion must be filed within a year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." K.S.A. 2024 Supp. 60-1507(f)(1)(A). This one-year timeframe could also apply to a claim of ineffective assistance of counsel in an earlier 60-1507 motion. See K.S.A. 2022 Supp. 60-1507(f)(1)(C) (amended statute that extended the filing deadline to include claims related to a prior 60-1507 motion); *Denney v. State*, No. 126,784, 2024 WL 3738410, at *3 (Kan. App. 2024) (unpublished opinion) ("[T]he Legislature intended for [the amendment] to apply only to claims of ineffective assistance of counsel against an earlier K.S.A. 60-1507 attorney."); see also *Rowell v. State*, 60 Kan. App. 2d 235, Syl. ¶ 3, 490 P.3d 78 (2021) ("The one-year period for filing a 60-1507 motion to challenge counsel's representation in a prior 60-1507 proceeding begins when the mandate issued on that prior 60-1507 proceeding.").

Torrence's motion does not allege ineffective assistance of counsel in his first 60-1507 motion—nor could it because Torrence represented himself in that motion and the appeal. See *Torrence*, 2020 WL 6930802, at *2. Therefore, Torrence needed to file the 60-1507 motion at issue here within one year of the Kansas Supreme Court's denial of his petition for review on his direct appeal, which was in February 2018, and the mandate

7

was issued shortly thereafter. Torrence did not meet that deadline; he filed this 60-1507 motion over four years later in October 2022. His motion is therefore untimely—which Torrence candidly concedes in his pro se supplemental appellate brief.

*Torrence Fails to Show Manifest Injustice Through a Claim of Actual Innocence.*

"K.S.A. 60-1507 motions are time-barred if filed more than one year after the case is final unless a movant can establish manifest injustice." *Mitchell*, 315 Kan. 156, Syl. ¶ 5; *Noyce*, 310 Kan. 394, Syl. ¶ 2 ("The time limit for filing a K.S.A. 60-1507 motion may be extended beyond the one-year deadline only to prevent manifest injustice, which is defined in this context as being obviously unfair or shocking to the conscience."); Kansas Supreme Court Rule 183(c)(4). For purposes of finding manifest injustice, "the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2024 Supp. 60-1507(f)(2)(A). "[T]he term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2024 Supp. 60-1507(f)(2)(A); see *Beauclair v. State*, 308 Kan. 284, 294, 419 P.3d 1180 (2018). "Claims of manifest injustice under K.S.A. 60-1507(f)(2) must be asserted in the motion itself or presented in district court or such claims will not be considered on appeal." *Wilkerson v. State*, 38 Kan. App. 2d 732, Syl. ¶ 2, 171 P.3d 671 (2007).

In his motion, Torrence claimed actual innocence based on the following allegedly new evidence: (1) Walmart surveillance videos, (2) the State's agreement with a trial witness, (3) false testimony regarding a firearm, and (4) evidence tampering. A claim of actual innocence intended to show manifest injustice to overcome the one-year time limit for filing a 60-1507 motion must make more than a conclusory claim of innocence—it must assert that the new evidence makes it more likely than not that no reasonable juror would have convicted him. *Beauclair,* 308 Kan. at 300. Additionally, the "new evidence"

8

must generally be newly discovered evidence—meaning the new evidence was not presented at trial and could not have been produced at trial through reasonable diligence. See *Moncla v. State*, 285 Kan. 826, 840, 176 P.3d 954 (2008) ("[I]n considering whether the district court should have conducted an evidentiary hearing before denying a new trial, we consider . . . whether [the movant]'s newly discovered evidence could have been produced at his trial through the exercise of reasonable diligence."). However, when a defendant alleges actual innocence based on new evidence—when asserting a claim of constitutionally ineffective assistance of counsel based on the counsel's failure to discover and present the new evidence at trial—the new evidence is simply evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."); *Reeves v. Fayette SCI*, 897 F.3d 154, 161-64 (3d Cir. 2018) ("[W]e now hold that when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway.").

Here, Torrence does not seek to overcome the one-year time limit for asserting a 60-1507 motion by alleging ineffective assistance of prior 60-1507 counsel related to his attorney's failure to discover or present the alleged new evidence. Therefore, to overcome the procedural hurdle of the one-year time limit, Torrence must make more than a conclusory assertion that the newly discovered evidence demonstrates "it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2024 Supp. 60-1507(f)(2)(A).

A. *Walmart surveillance videos*

In his motion, Torrence asserted he was actually innocent based on "new reliable evidence, in the form of [a] November 29, 2013, Walmart surveillance video, showing the actual robbery of the Walmart/Dollar General stores the State charged [Torrence] with having committed." Torrence further explained in his motion:

"[O]n November 29, 2013—seven months after [Torrence's] arrest, a man robbed another Walmart location. He is the same person that robbed the stores the State accused [Torrence] of having robbed. The man that robbed Walmart on November 29, 2013, has the exact same clothes on that he had on when he robbed three of the stores [Torrence] was convicted of robbing. The November 29th surveillance video is evidence that someone other than [Torrence] committed the crimes charged against [Torrence]."

This actual innocence claim did not merit an evidentiary hearing because the surveillance videos are not *new evidence*. Torrence does not allege that his trial counsel's ineffective assistance resulted in the videos not being presented, which means he must show that the videos were not available during his trial. *Skaggs v. State*, 59 Kan. App. 2d 121, 142-44, 479 P.3d 499 (2020) ("[W]e hold that when a movant asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* procedural actual innocence standard."). Torrence's trial occurred in January 2015, and the surveillance videos depict events before that date—so the videos were available at the time of trial. Additionally, Torrence could have raised the issue related to these videos in his first 60-1507 motion. Therefore, these videos do not constitute "new evidence" of actual innocence to establish manifest injustice for the purpose of overcoming the one-year time limit on filing 60-1507 motions. 59 Kan. App. 2d at 142-44; *Robinson v. State*, No. 115,555, 2017 WL 2494964, at *5 (Kan. App. 2017) (unpublished opinion) (claims known at the time of trial

10

or available to be raised on direct appeal do not constitute "new evidence" for purposes of establishing manifest injustice as required by K.S.A. 2016 Supp. 60-1507[f][2][A]).

## B. State's agreement with witness

Torrence also asserted he was actually innocent because of "the State's knowing failure to divulge the existence of an agreement alleged accomplice [L.B.] had with the State; combined with the State's failure to correct the prosecutor's false statement there was no existence of an agreement for leniency for [L.B.] in exchange for her testimony . . . ." Torrence further argued "the misleading testimony of [L.B.] could in reasonable likelihood have affected the judgment of the jury" because "[L.B.] was a key witness for the State at [Torrence]'s trial."

Torrence failed to provide any evidence supporting his conclusory claim that the State had a clandestine agreement with L.B. for leniency in exchange for favorable trial testimony. The most relevant exhibit Torrence included was a declaration from a mutual acquaintance of both him and L.B., who claimed that L.B. told him "the police forced [L.B.] to ride around town with them to help them find [Torrence]" and "told [L.B.] if she ever told anybody what they did, they would put her in jail for what her and that Mexican did, plus keep her from getting her daughter back." But, even taken as true, that declaration does not address whether L.B. had a surreptitious agreement with the State to testify at Torrence's trial.

This claim of actual innocence did not merit an evidentiary hearing because it is impermissibly conclusory. See *Breedlove v. State*, 310 Kan. 56, 66, 445 P.3d 1101 (2019) ("To avoid summary denial of a K.S.A. 60-1507 motion, a movant has the burden to make more than conclusory contentions and must state an evidentiary basis in support of those claims or some evidentiary support must appear in the record."); *Beauclair*, 308

Kan. at 302; *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015) ("[Movants] must do more than make conclusory remarks with no evidentiary support.").

C. *Fabricated firearm*

Torrence asserted he was actually innocent based on "new reliable evidence [showing] that the State knowingly used false and misleading evidence, in the form of [M.T.], [C.B.], a police fabricated replacement gun, and perjured testimony, to withhold, and by having withheld, favorable evidence from [Torrence] and the jury which demonstrate [Torrence] was actually innocent of unlawful possession of a firearm, and of having possessed or used that same [gun] in an aggravated robbery or attempt thereof." Torrence further argued "[t]he State's knowing use of the false/misleading testimony of [C.B.] and [M.T.], and the 'replacement gun,' in reasonable likelihood affected the judgment of the jury."

Again, most of the information Torrence identified was not new—indeed, much of it was testimony at his trial. Torrence claimed that the "prosecution never provided [him] his attached Exhibit # 12 [a Wichita Police Department incident report] before September 22, 2022." But nothing in that report supports Torrence's contention that the State presented a fabricated firearm at his trial. That claim is wholly conclusory and therefore insufficient to warrant an evidentiary hearing. *Beauclair*, 308 Kan. at 302.

D. *Evidence tampering*

Torrence asserted he was actually innocent on the basis of "[n]ew reliable evidence, in the form of recordings made by [A.R.M.] on Sedgwick County Jail's inmate phones on June 20th, June 21st, and July 4th, 2021, and attached Exhibit #11, demonstrate that a manifest injustice occurred by the strong potential that [Torrence's] conviction and sentences are further predicated on the State's use of tainted evidence

12

impermissibly tampered with by Custodians of Evidence for [the] State of Kansas; namely, [R.W.] or 'others'." Torrence further explained that "[A.R.M.] is heard June 20th and June 21st, 2021, and July 4th, 2021—on Sedgwick County Jail's inmate phone recordings—telling the receiving party that former Sedgwick County Custodian of Evidence [R.W.] told him, or said within [A.R.M.'s] hearing range, that [R.W.] and 'all evidence custodians' tampered with evidence stored by law enforcement while employed as Custodians of Evidence for the State of Kansas, by switching evidence from one case to another, stealing it, or, in bad faith, destroyed evidence."

A.R.M.'s declaration stated he "was an inmate in the Sedgwick County Jail with [R.W.]" and that R.W. was "the former Custodian/Supervisor of the Sedgwick County Evidence and Property Department for the Sheriff's Department and Wichita Police Department." His declaration further claimed "[R.W.] admitted in my presence (hearing range) that he mishandled, stole, and commingled evidence of unrelated cases; further, that this is done by all custodians of the evidence locker." Even accepting as true everything A.R.M. claimed in his declaration, Torrence provides no evidence that someone improperly tampered with evidence in *his* case. Torrence simply concludes that someone must have tampered with the evidence in his case. This conclusory allegation was therefore insufficient to warrant an evidentiary hearing.

Torrence attempts to demonstrate manifest injustice—entitling him to elude summary dismissal based on the motion's untimeliness—by arguing that he was not able to obtain an allegedly exculpatory surveillance video of a robbery at a Walmart that occurred while Torrence was in custody in 2013 and that the sworn declarations and other documentary evidence were unknown at the time of trial.

Although the district court summarily denied Torrence's motion relying primarily on its successiveness, this court can affirm a district court's accurate conclusion for reasons different than those relied on by the court. See *In re Marriage of Bradley*, 282

13

Kan. 1, 7-8, 137 P.3d 1030 (2006) (affirming district court "[a]lthough based on different reasoning"); *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005) ("The reason given by the trial court for its ruling is immaterial if the result is correct."). It is undisputed that Torrence failed to file the motion at issue in this appeal within the one-year time limit, which would ordinarily act as a procedural barrier to review. However, Torrence can overcome that procedural hurdle if he could establish manifest injustice would result from imposition of the one-year time restriction. "For purposes of finding manifest injustice . . . the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2024 Supp. 60-1507(f)(2)(A). Torrence failed to do either and thus cannot overcome the procedural hurdle prohibiting review of any of the claims in his untimely 60-1507 motion. *Mitchell*, 315 Kan. 156, Syl. ¶ 5 ("K.S.A. 60-1507 motions are time-barred if filed more than one year after the case is final unless a movant can establish manifest injustice.").

II.     FACTUAL FINDINGS AND LEGAL CONCLUSIONS

As a final matter, Torrence argues the district court "violated Kansas Supreme Court Rule 183(j) by not addressing all issues presented in [his] K.S.A. 60-1507 motion." Specifically, Torrence contends the district court's order summarily denying his motion did not address his claim that the State failed "to divulge the existence of an agreement alleged accomplice [L.B.] had with it, nor to make any effort to correct its false statement during Closing Arguments that no agreement existed." Kansas Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. at 238) provides that district courts "must make findings of fact and conclusions of law on all issues presented." This court exercises de novo review over whether the district court complied with Rule 183(j). *Sherwood v. State*, 310 Kan. 93, 99, 444 P.3d 966 (2019).

14

While it appears the district court's order did not explicitly address this issue, the court's order *did* conclude that Torrence's motion was successive and that he was not entitled to relief—a substantive finding that foreclosed an evidentiary hearing. Moreover, even if the district court failed to address the claim, it does not impede appellate review. This court's independent, de novo review of the motion, files, and case records conclusively shows Torrence was not entitled to relief because his motion is untimely, and he failed to demonstrate manifest injustice under K.S.A. 2024 Supp. 60-1507(f)(2)(A) permitting review of his untimely motion. See *Breedlove*, 310 Kan. at 60 ("[E]ven if a district court's findings are abbreviated, we will not remand solely on that basis—the relevant inquiry is whether we can conduct meaningful review."). The judgment of the district court is therefore affirmed.

CONCLUSION

Although the district court summarily denied Torrence's motion as successive and conclusory, this court reaches the same result based on its untimeliness. K.S.A. 60-1507 motions like Torrence's must generally be brought within one year of the final order of the appellate court—and it is undisputed that Torrence failed to meet that requirement. This procedural barrier to judicial review can be overcome by a showing of manifest injustice, which Torrence failed to do. Torrence's 60-1507 motion is impermissibly untimely, and the district court did not err in summarily denying it without a hearing. Additionally, the district court's findings were sufficient for appellate review.

Affirmed.